### THE CHESNUT-HILL RESERVOIR COMPANY *against* CHASE:

#### IN ERROR.

Where the declaration, in an action on a note against a corporation, alleged, that the note was made by the defendants, by their committee *J. A. A.* and two others, and the note produced was signed by *J. S. A.* and such two others, who were the committee of the corporation for that purpose; it was held, that there was no variance.

Where a corporation, by its vote, authorized its committee to purchase lands for its use, and to make payment in its notes, signed by the president and countersigned by the secretary, and to give obligations, in the name of the corporation, at the time of taking the deeds, for such notes, when the president should be able duly to execute the same; and such committee, having purchased land, gave to the vendor a writing, signed by themselves, for the corporation, promising to pay him a certain sum of money; to which promise a clause was added in these words: "This note is to be exchanged for one duly executed by the president of said company, as soon as he is able to do it;" it was held, 1. that the act of the committee in giving such writing, was

*Windham,*
*July, 1840.*

The Chesnut-
Hill Reservoir
Co.
*v.*
Chase.

not pursuant to their authority, and consequently, no recovery could be had in a suit on it against the corporation ; but 2. as the committee had power to purchase the lands, an action for lands sold and conveyed, was sustainable.

In an action against the maker of a note, for the amount specified therein, brought, by the assignee, in the name of the payee, after an assignment of all the payee's interest, with notice to the maker, the defendant cannot avail himself of a discharge obtained from the payee subsequently to the assignment.

A party who has induced another to give an instrument, by false and fraudulent representations as to its effect, cannot avail himself of that instrument so as to have effect given to it contrary to such representations.

Therefore, where the replication to a plea of discharge after the commencement of the suit, alleged, that the discharge was obtained from the plaintiff, and he was induced to execute it, by the false and fraudulent representations of the defendant, in relation to its effect, and an assurance made by the defendant to the plaintiff, (he not being able to read writing,) that it would have no effect upon that suit ; to which the defendant rejoined, that such discharge was not procured from the plaintiff, by false and fraudulent representations of its effect, nor by an assurance that it would not affect this suit ; and this issue was found against the defendant ; it was held, that the plaintiff was entitled to judgment.

If the replication, in such case, was defective, for want of a more specific statement of the representations made by the defendant, the defect was cured by verdict.

THIS was an action of *assumpsit* in five counts, brought by *Chase* against the *Chesnut-Hill Reservoir Company*, a body corporate, duly constituted, to the county court of *Windham* county.

The first count was upon a promissory note, for 55 dollars, dated *November* 16th, 1836, payable on the 1st of *December*, 1837, with interest, in the usual form of declarations on promissory notes.   The second count was similar, except that it alleged that the defendants made and delivered the note, by *Ebenezer Young, James A. Arnold* and *John S. Harris*, their committee thereunto lawfully authorized.   The third count was like the second, with this addition to the promise to pay, *viz.* that said note should be exchanged by the president of said company, as soon as he should be able to do it ; and that said note having been presented to *Calvin Leffingwell*, the president of said company, to be so exchanged, he refused to give a note signed by him.   The fourth and fifth counts were for lands sold and conveyed to the defendants.

To this declaration the defendants pleaded, first, the general issue ; and secondly, a discharge of all demands given since the commencement of the suit.

To the last plea the plaintiff replied, that before the discharge was given, the note was by him duly assigned to one *Elisha Stone,* who commenced and prosecuted this suit in the plaintiff's name, for his own benefit; and that the plaintiff had no interest in it; which was well known to the defendants, when they procured said discharge; and that said discharge was obtained from him, and he was induced to execute it, by the false and fraudulent representations of the defendants, in relation to its effect, and an assurance made by them to him, (he not being able to read writing,) that said discharge would have no effect upon the suit then pending on said note.

*Windham,*
July, 1840.
————
The Chesnut-
Hill Reservoir
Co.
*v.*
Chase.

The defendants traversed the assignment, and that the discharge was obtained from the plaintiff, by the defendants, by false and fraudulent representations of the effect of said discharge, or by any assurance that it would not affect said suit.

Both issues were closed to the jury, and both found in favour of the plaintiff.

The defendants thereupon moved for judgment in their favour *veredicto non obstante;* which motion the court overruled.

On the trial, the following votes of the company, by virtue of which the note in suit, as the plaintiff claimed, was given, were exhibited in evidence to the jury: "Resolved, that *Ebenezer Young, John S. Harris* and *James S. Arnold* be a committee to make and close the contracts for the necessary lands and privileges, and take due conveyances of the same to said company, and to advise with the directors of said company on unexpected questions.

"Resolved, that payment be made for lands bought, in notes of said company, signed by the president and countersigned by the secretary; and that at the taking of the deeds, the committee for procuring the same are authorized to give obligations in the name of the company, for such notes, when the president shall be able duly to execute the same."

The note in suit was also read to the jury. It was as follows: "*Killingly, Nov.* 16, 1836. For value received, the *Chesnut-Hill Reservoir Company* promise to pay *Danforth Chase,* or order, fifty-five dollars, by the 1st day of *December,* 1837, with interest.

*Windham, July, 1840.*

The Chesnut-Hill Reservoir Co. *v.* Chase.

"This note is to be exchanged for one duly executed by the president of said company, as soon as he is able to do it. For said company,

*Ebenezer Young,*  ⎱ Committee
*James S. Arnold,*  ⎰ of purchase
*John S. Harris,*  ⎰ for said Co."

To the admission of this note in evidence the defendants objected, on the ground that it was subscribed with the name of *James S. Arnold,* as one of the committee, whereas the note in suit is alleged in the declaration to have been executed by *James A. Arnold,* as one of such committee. The court over-ruled the objection, and instructed the jury, that there was no material variance between the note declared on and that shewn in evidence.

The defendants also claimed, and prayed the court to charge the jury, that said committee were not authorized, by said votes of the company, to give the note in question; and that, therefore, it was not binding on the company. The court over-ruled this objection, and charged the jury, that said votes of the company were sufficient authority to the committee to give the note, and the defendants were bound thereby.

The defendants filed a bill of exceptions to these decisions of the court, and thereupon brought a writ of error in the superior court; the judgment of the county court was there affirmed; and by motion in error, the record was brought before this court for revision.

*Strong* and *Backus,* for the plaintiffs in error, contended, 1. That there was a fatal variance between the writing declared on and that given in evidence. In the first place, the middle name of a person, or the initial letter standing for such middle name, is a material part of that person's name. It goes to designate the individual, as much as the first or last name. *John S. Peters* is a different man from *John T. Peters.* Secondly, the variance affects the identity of the contract in question. A corporation acts by its agents; and a contract made by one agent, is a different contract from one made by another agent. Here, one contract is described in the declaration; another is shewn to the jury. Thirdly, a variance in the description of a contract affecting its identity,

is fatal.   3 *Stark. Ev.* 1597, 8.     *Rossiter* v. *Marsh,* 4 *Conn.* *Rep.* 196.    *Rossiter* v. *Downs, Id.* 292.

*Windham,*
July, 1840.
_____
The Chesnut-
Hill Reservoir
Co.
*v.*
Chase.

2. That admitting the identity of the writing described in the declaration with that given in evidence, it was not obligatory upon the company ; the committee having no authority from the company to give such a writing.   The first vote authorizes the committee to purchase the necessary lands : the second, to give obligations, not for the purchase money, but for notes of the company, signed by the president and countersigned by the secretary.  A note for money and an obligation to give the notes of the company, are distinct things ; as much so, as a deed  and  a bond for a deed.   The writing in question can not be regarded as an obligation to give such notes. It is in the form of a note ; and the plaintiff has declared on it as a note.   It is none the less a note, because it contains a *memorandum*, at the bottom, that it is to be exchanged.  But if the *memorandum* may be considered as an obligation for a note, it is not such a note as the committee were authorized to stipulate for ; which was one signed by the president *and countersigned by the secretary.*   The company might have had good reasons why it should not be bound by a note, unless countersigned by their secretary.   At any rate, they had an unquestionable right to limit the powers of their agents, as they thought proper ; and if such agents did not strictly pursue their authority, the principal is not bound.   2 *Kent's Com.* 620.   *Thompson* v. *Stewart,* 3 *Conn. Rep.* 172.   1 *Sw. Dig.* 327.   *Andrews* v. *Kneeland,* 6 *Cowen,* 354. 356.   *Nixon* v. *Hyserott* & al. 5 *Johns. Rep.* 58.   *Terry* v. *Fargo,* 10 *Johns. Rep.* 114.

3. That the replication is insufficient, and the defendants are entitled to judgment *veredicto non obstante.*   In the first place, the replication does not specify, as it should do, what the representations, which are alleged to be fraudulent, were. 1 *Story's Eq.* 204. 206.   Secondly, it does appear, that the representations related only to the *effect of the discharge,* which was a mere question of law, equally open to both parties.   Will a representation regarding the effect of a written instrument, which must be matter of opinion only, though false and fraudulent, avoid that instrument?   Suppose *A* gives to *B* a note payable on demand, upon the representation of *B* that it would not bear interest until demand made ;

*Windham,*
July, 1840.
_____
The Chesnut-
Hill Reservoir
Co.
*v.*
Chase.

would this avoid the note? Thirdly, the fact that the plaintiff was illiterate, makes no difference; for it is not averred, that the writing was not read to him. Nor does it appear that he was not perfectly acquainted with the *contents* of the writing, and with all the *facts* in the case.

4. That the assignment of the note to *Stone* did not preclude the defendants from availing themselves of the discharge in this suit. The plaintiff on the record can always controul the suit.

*Welch* and *Child*, for the defendant in error, contended, 1. That the variance between the writing declared on and that read in evidence, was not a fatal one. The averment is, that the *defendants* made the writing, signed by *Young, James A. Arnold* and *Harris*, as a committee. The writing produced was made by the defendants, through the agency of their committee. Now, in the first place, if one of the committee were misnamed, the variance would be immaterial, as the defendants would still be bound. *The People* v. *Runkel*, 9 *Johns. Rep.* 147. 156. *Wood* v. *Bulkley*, 13 *Johns. Rep.* 486. If the declaration had alleged, that the defendants, by *James A. Arnold*, signing his name *James S. Arnold*, made the contract; would it have been objectionable? But this would be declaring according to the legal effect, and the same thing as the present declaration. But secondly, the letter between the *Christian* and surname is not, in legal contemplation, a part of the person's name, but is merely descriptive of the person, like "junior" or "2nd." *The People* ex rel. *Bush* & al. v. *Collins*, 7 *Johns. Rep.* 549. *Franklin* & al. v. *Talmadge*, 5 *Johns. Rep.* 84. *Coit* v. *Starkweather*, 8 *Conn. Rep.* 289. *Litchfield* v. *Farmington*, 7 *Conn. Rep.* 100. *Keene* v. *Meade*, 3 *Peters*, 7. *Kincaid* v. *Howe*, 10 *Mass. Rep.* 203.

2. That the committee were duly authorized, by the company, to make the contract in question. They were to buy land for the company, and to give, in payment, their obligations for the notes of the company. This the committee have done. The objection is, that the writing does not say, that the notes to be given by the company, were to be *countersigned by the secretary.* In the first place, this was immaterial, as it was not necessary to make them binding. But sec-

*Windham,*
July, 1840.

The Chesnut-
Hill Reservoir
Co.
*v.*
Chase.

ondly, the authority given by the first vote was sufficient, as the power to contract for the land necessarily implied a power to bind the company to pay for it.

3. That the facts set forth in the replication and found by the jury, are sufficient to avoid the discharge. The plaintiff could not read ; and the defendants induced him to sign the discharge, by false and fraudulent representations, assuring him that it would not affect this suit. The question is one of falsehood and fraud, and not of a mistake of law.

4. That as the discharge was given after the note had become the property of a *bona fide* assignee, who is the real plaintiff in the suit, it could not, if otherwise unexceptionable, affect his rights. *Stat.* 61. (ed. 1835.)

WILLIAMS, Ch. J. The first question to be considered, is, was there such a variance in the note declared upon and the note exhibited, as that it should not have been admitted in evidence? It is objected, that the note declared upon is alleged to be signed by *James A. Arnold,* and the note shown is signed by *James S. Arnold* ; and much learning has been adduced as to the effect of a mistake in the middle name, or the letter in the middle of a name. We do not think the case requires us to examine that subject ; for, admitting that this constitutes a part of the name, the allegation is not, that *Arnold* signed this note by the name of *James A. Arnold,* but that *James A. Arnold* signed it. This he might have done, by the name of *James S. Arnold.* Nor was the objection, that *James A. Arnold* was not one of the committee, but *James S. Arnold.* The objection was, that the note exhibited varied from that declared on. But the declaration does not set out the names appended to the note ; but that the note was executed by the defendants, by their committee, *James A. Arnold,* &c. ; and we see nothing on the face of the note disproving that fact. It only shows, that if *James A. Arnold* executed the note, he did it by the name of *James S. Arnold,* a fact not impossible, or inconsistent with the fact alleged. We think, therefore, there is no variance.

Another objection was, that the committee were not authorized to make this note ; and that, therefore, the court should so have charged the jury. The votes of the company set out in the bill of exceptions, shew the powers given to the

*Windham,*
July, 18;0.

The Chesnut-
Hill Reservoir
Co.
*v.*
Chase.

committee. These were, to purchase the lands necessary for the company; to take conveyances thereof; to advise the directors; and to give obligations, in the name of the company, for notes to be given, signed by the president, and countersigned by the secretary, in payment of said land. Here are their powers distinctly defined; and it is hardly necessary to say, that where an agent is appointed with limited powers, he cannot exceed them. Is this note, then, in accordance with these powers? It purports to bind the company to pay to the plaintiff, or his order, a sum of money at a future time, with interest. Now, the company, for some reason, chose, that notes to be obligatory upon them, should be signed by their president and countersigned by their secretary. This is not signed by either. But the note went further, and imposed an obligation, that it was to be exchanged for one duly executed by the president of said company, as soon as he was able. This, however, does not make it such an obligation as the company authorized this committee to give: and they had no more right to give the note in question than a clerk in a bank, who is authorized to pay out the notes of the company, signed by the president and cashier, has to bind the company, by a note in his own name, promising to pay notes of the company. Of course, the opinion of the county court was wrong; and it follows, that upon the first three counts the defendants might have been entitled to a verdict.

But the fourth count declares for the price of certain lands, sold by the plaintiff to the defendants, it being the consideration for which the note was given; and if that note is void, as has been decided, and the committee had power to make a contract for the lands, which is not denied, then the plaintiff has a right to recover upon that count, unless the defendants can shew some new fact by way of defence. This they have attempted to do, by their second plea. We are then to inquire as to the effect of that instrument, as connected with the facts set up in the replication.

These facts are, that the plaintiff, before the suit was commenced, had assigned this note to *Elisha Stone,* and had no interest in it whatever; that the suit was commenced and prosecuted by *Stone;* and that the defendants had notice of it. It is not indeed alleged, that the *debt* for the land was assigned, but only that the *note* was assigned. We think,

however, it is apparent, that the parties intended, by this assignment, that *Stone* should have all the right or claim of the plaintiff, to the debt secured by the note.    It was not the paper merely he meant to assign, but that of which the paper was the evidence.    If, therefore, the note became unavailable, it is not to be believed, that the assignee was only to have the paper, and the assignor the debt, or all which made the paper valuable.    Something more must have been meant ; as in the case of *Bulkley* v. *Chapman* & al. 9 *Conn. Rep.* 5. where on the back of a mortgage deed, the mortgagor assigned all his right, title and interest in the property mortgaged, this court held, that it conveyed the interest in the debt secured by the mortgage.    Here we must intend, that the debt was assigned, so that *Stone* was the owner of the debt or claim ; for the replication alleges, that this suit was commenced and prosecuted, by *Stone*, for his own benefit ; and this suit embraces a claim for the price of the lands, as well as one on the note itself.    The plaintiff, in his replication, ought to have stated this according to its legal effect, as an assignment of the debt; but no objection has been made upon that ground ; and we think, in this stage of the cause, it could not have availed, had it been made.    We consider, then, that *Stone* is the real plaintiff, and *Chase* merely the nominal plaintiff.

In such a case, in *England*, the defendant would not be suffered to set up a release obtained from a nominal plaintiff. *Legh* v. *Legh*, 4 *Bos. & Pul.* 447.    Our courts did not adopt this practice ; but in 1822, the legislature passed an act, providing, that when the defendant in any suit upon a bond, note, or other *chose in action*, shall plead a discharge, the plaintiff may reply or prove an assignment, and notice given to the defendant, after which such discharge shall be no otherwise available than in a court of equity.    And we do not see how, upon the facts stated in this replication, the defendants could have protected themselves in a court of equity.

But however this may be, other facts are disclosed, in this replication, which, we think, are decisive to avoid the plea ; (we say nothing of the plaintiff's having been an illiterate man, as it is not averred that the discharge was not read to him.) We refer to that part of the plea in which it is averred, that he was induced to execute the receipt, by false and fraudulent representations of the defendants, in relation to the effect

*Windham,*
July, 1840.

The Chesnut-
Hill Reservoir
Co.
*v.*
Chase.

*Windham,*
July, 1840.

The Chesnut-
Hill Reservoir
Co.
*v.*
Chase.

of the discharge, and an assurance of the plaintiff that it would have no effect upon the suit then pending. The inducement, then, held out to procure him to sign this instrument, was one materially affecting the rights of the owner of this claim; and if the defendants are right in their construction of the law upon the last point, it was utterly false; and the use the defendants now attempt to make of it, shews that it was fraudulent.

It is said, however, that the allegation as to fraud and falsehood, is not made in such a manner as to be regarded by the court; as it does not point out what the allegations were, but generally, that it was procured by false and fraudulent representations of the defendants, in relation to the effect of the discharge, and an assurance made by them to him, that it would have no effect upon the suit.

If we admit, that the allegations are so made, that upon demurrer, the replication would be held insufficient; yet, when we look at the rejoinder, we can have no doubt that the fact thus imperfectly alleged, has been fairly presented to the jury. The defendants say, "said release was not by the defendants obtained and procured from the plaintiff, by false and fraudulent representations of the effect of said discharge, nor by any assurance that the same could not affect said suit." This question, therefore, was directly tried, and a verdict found against the defendants; and whatever defect there may have been in the allegations in the replication, they are cured by the verdict; for it is clearly found, that the defendants assured the plaintiff that this release would have no effect upon this suit, and that that assertion was false and fraudulent, *i. e.* that it was made with the design to impose upon the plaintiff.

The only remaining question then, is, whether an assertion made by one man to another as to the effect of an instrument, which he is desirous to obtain from him, which is false, and fraudulently made, and which is the procuring cause of the execution of that instrument, shall avoid it. It is said, that it is but an assertion of what the law is; and as every one is supposed to know the law, it cannot be regarded by the court, the facts being known equally by both parties. How far a mere mistake of the law will be a ground for setting aside a contract, seems to be somewhat doubtful. 2 *Evans' Pothier,*

369. (ed. 1806.) *Champlin* & al. v. *Laytin* & al. 6 *Johns.* *Ch. Rep.* 189. 202. When a contract is just what the parties intended it should be, in the absence of all fraud, it has been held, that chancery could not interfere, as this would be to make contracts rather than rectify them. *Hunt* v. *Rousmanier,* 1 *Pet.* 1. *Wheaton* v. *Wheaton,* 9 *Conn. Rep.* 96. Nor will ignorance of a legal right take a case from the general rule, where the circumstances would otherwise create an equitable bar to the legal title. *Storrs* & al. v. *Barker,* 6 *Johns. Ch. Rep.* 166.

We know of no decision, however, that where a man ignorant of law has been induced to do an act injurious to himself or others, by the false and fraudulent assertions of his better informed opponent, even upon a point of law, he could obtain no relief. In *Hunt* v. *Rousmanier,* the late Ch. J. *Marshall,* after saying that courts of equity relieve in cases of a mistake and fraud, remarks, that in that case there was no ingredient of fraud. 8 *Wheaton* 211. And *Washington,* J. says, when commenting upon the case of *Lansdown* v. *Lansdown, Moseley,* 364. the heir might have been imposed upon, by some unfair representations of his better informed opponent. 1 *Pet.* 16. In *Wheaton* v. *Wheaton,* 9 *Conn. Rep.* 99. *Bissell,* J. says, "there is no pretence of fraud." And in *Doe* d. *Lloyd* v. *Bennett,* 8 *Car. & P.* 124. *Coleridge,* J. says, " If a man were indeed to execute an instrument, supposing it would operate one way, when it really operated another, such an instrument would be invalid." If the judge means nothing more than if the party executing the instrument had one made according to his intention, but operating in a different manner from what he expected, it would therefore be void ; this would be in face of the decisions above cited, by our own courts ; but if he meant, induced by another, falsely or fraudulently, then it would be like the case before us.

In *Champlin* v. *Laytin,* 1 *Edw.* 473. the vice-chancellor says, "that if one is ignorant of a matter of law involved in the transaction, and another, knowing him to be so, takes advantage of such circumstance to make the contract ; here the court will relieve, although perhaps more properly on account of fraud in the one party than of ignorance of law in the other."

The above cases are not cited as authorities *ad idem,* but

*Wndham,*
*July, 1840.*

The Chesnut-
Hill Reservoir
Co.
*v.*
Chase.

as tending to shew a concurrence of opinion in eminent jurists, that fraud upon subjects of this kind might be practised, and when it was, it would vitiate the contract procured by means of it. Should a lawyer purchase an estate of his client, the title to which was in dispute, by representing to him that the law was so that he could not hold it, when he knew otherwise, could he defend against a bill to set aside this contract, upon the ground that his client knew the law? When the law prohibits an act to be done, that law cannot be universally enforced, unless all are supposed to be apprised of it. It would be law only for the enlightened, and not for the ignorant. It would indeed be no law, because it would not be general. But when the law affects the rights of individuals only, we see no necessity for a presumption that an individual, who gives up his interest, upon the assertions of another in whose opinion he may have confidence, that the law did not recognize that interest, understood that law. Much less do we see any principle, which requires the court to say, that he who fraudulently made such a representation, shall carry away the spoils so obtained.

The facts contained in this replication shew, that the maker of this release was induced to execute it, upon the representation of him who now claims to profit by it; that this was done, when he could not conscientiously do it, if it is to have the effect contended for; that the defendants, as well as the plaintiff, were aware of this; and that the plaintiff did not intend to do any act inconsistent with the rights of his assignee. What he did, then, was induced, by a reliance upon the assertion of the defendants, that this receipt would not have that effect; and yet they now would use it, for the very purpose of producing that effect. Unless the defendants can produce some authority recognizing such a construction, this court are not disposed to introduce a precedent establishing fraud by law.

We are of opinion that there is no error.

In this opinion the other Judges concurred.

Judgment affirmed.