LIZZIE S. THOMAS *vs.* ADELBERT A. HALL.

Waldo.    Opinion April 14, 1917.

*Foreclosure proceedings.    Right to waive same.    Powers and rights of attorneys at law.    Subrogation.*

The plaintiff brought a writ of entry to settle the title to real estate. By agreement of the parties, the case was reported to the Law Court for determination upon so much of the evidence as is legally admissible.

The defendant had given the plaintiff, for real estate purchased of her, a demand note for $225. secured by a mortgage which was second to a prior mortgage which the defendant assumed and agreed to pay. Her own efforts to collect being unsuccessful, the plaintiff placed the matter in the hands of an attorney. She was advised that, because the equity above the mortgages was very scant and because of the financial irresponsibility of the defendant, the chances of collecting were extremely doubtful, but that it was advisable to try a foreclosure by publication. The foreclosure notice was signed by the plaintiff and seen by her in print. The defendant was referred to the attorney by the plaintiff as the proper person to settle with. The attorney several times assured the

defendant that he had until May thirteenth to make payment and this informa-
tion was communicated to the plaintiff. Though the attorney subsequently
learned that the time for redemption would expire on the eighth of May instead
of the thirteenth as he had supposed, he did not inform either plaintiff or defend-
ant of his error but still told the defendant payment could be made within
the time orginally set by him. While the plaintiff complained about the fore-
closure because of expense to her, and claimed that a suit on the note would
have been more efficacious, she continued to let the attorney handle the claim.
During the forenoon of May twelfth, one Knight came to the attorney's office
with the defendant and stated that they had agreed that Knight should help·
the defendant out of his trouble by buying the plaintiff's note and mortgage so
the defendant would owe Knight instead of the plaintiff. As the plaintiff
failed to come to the attorney's office, after being sent for, and Knight was about
to withdraw, the attorney took the amount of the mortgage and accrued costs,
endorsed the note and assigned the mortgage, as attorney for the plaintiff.
When, later in the same day, the money was offered the plaintiff by her attorney
she refused to accept it, stating she intended to punish the defendant. On the
night of the eleventh of May the buildings had been destroyed by lightning,
which fact was known to all parties on the twelfth. Insurance on the burned
buildings increased the value of the plaintiff's security. The plaintiff claims the
defendant's rights and Knight's rights in the premises were extinguished by
foreclosure of the mortgage.

*Held:*

1. That the assurance given the defendant that he had until May the thirteenth
   to pay the mortgage, was an extension of the period of redemption to that date,
   that under the facts of the case the attorney had authority so to do and that
   the plaintiff was bound by his action.

2. That Knight was not a volunteer, but having paid the mortgage on the
   assurance from the defendant that he should have the plaintiff's rights under
   the note and mortgage, he was entitled to receive and hold the same under
   the principles of subrogation.

3. The right by subrogation is an equitable matter of defense to this action at
   law, which was reported without any limitation of the court to the pleadings,
   and that the Law Court can give effect to the same, even though not pleaded.

Writ of entry to recover possession of a certain lot or parcel of land
situate in Lincolnville, in the county of Waldo and State of Maine.
Defendant filed plea of general issue. This case is reported to Law
Court for its determination upon so much of the evidence as is legally
admissible. Judgment for defendant.

Case stated in opinion.

*Arthur S. Littlefield,* for plaintiff.

*Job H. Montgomery,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, MADIGAN, JJ.

MADIGAN, J.   The plaintiff claims title to real estate under a foreclosed mortgage.  By agreement of the parties the case was reported to the Law Court for determination upon so much of the evidence as is legally admissible.

The premises were conveyed to the defendant by the plaintiff subject to an existing mortgage, which the defendant assumed and agreed to pay as a part of the consideration.   The balance of the purchase price was cash and a demand note secured by a second mortgage on the premises.

After repeated unsuccessful attempts to collect herself, the plaintiff consulted an attorney by whom she was advised that the defendant was worthless, the prior mortgage large and the description in her own mortgage indefinite, but that possibly, if foreclosure by publication were started, the defendant, through shame, might be stimulated to unusual exertion.   She personally signed the foreclosure notice and left the mortgage and note in the attorney's hands and told the defendant that he must settle with the attorney who had the matter in charge.

The defendant several times was assured by the attorney that he had until the thirteenth day of May to make payment and this fact was communicated to the plaintiff.   The attorney erred in supposing the thirteenth was the true date, but, on learning later that the proper date was the eighth day of May, no notice of that fact was given to the defendant.

About nine o'clock on the morning of May 12th the defendant and one Knight came into the attorney's office and told him the house on the mortgaged premises had been destroyed by lightning the day before and that Mr. Knight had come down to help the defendant in his trouble, that he was going to buy the Thomas mortgage and pay the attorney for it and let Hall owe him instead of Mrs. Thomas. The amount due upon the mortgage, including principal, interest and costs, was computed and the defendant was sent to ask Mrs. Thomas to come to the office, get her money and settle up.   Not finding her, he went again when she informed him she would be right up.   As she did not appear, Knight becoming impatient was withdrawing when the attorney, though having no written authority

therefor under seal or otherwise, transferred both note and mortgage to Knight. Later in the same day the plaintiff refused to receive the money from the attorney, remarking she intended to punish the defendant, and, on the day following, demanded her papers and insisted that the defendant's rights were terminated by foreclosure. All parties knew on the morning of the twelfth that the buildings had been burned and it was also in evidence that, by reason of insurance, the plaintiff's security was improved.

We are satisfied that the papers were left with the attorney not merely for the purpose of foreclosure but also for the purpose of collecting the debt. The plaintiff testifies that she was told by the attorney that, if he collected the money during the year, he would notify her at once. Whether the expression " within the year" was actually used by the attorney or not is open to some question, to say the least it would be a little unusual. She had repeatedly said that she wanted the money, that she had worked hard for it and needed it to build, and it was for the purpose of getting it that the matter was left with the attorney. It follows therefore that the attorney had ample authority to receive the money due on the mortgage at any time before the actual expiration of the foreclosure.

We feel clear also that under the evidence the time allowed for redemption was extended and that the same expired on May 13th and not on May 8th. To hold otherwise would be contrary to the equities of the case and to the well established principles governing in such matters.

That the mortgagee may waive the foreclosure altogether or extend the time within which it would expire is well settled. "The right to redeem mortgaged real estate may be kept open by the express agreement of the parties, or by facts and circumstances from which an agreement may be satisfactorily inferred when it would be foreclosed were it not for such agreement." *Dow* v. *Bradley*, 110 Maine, 249; *Fisher* v. *Shaw*, 42 Maine, 32; *Chase* v. *McLellan*, 49 Maine, 375; *Stetson* v. *Everett*, 59 Maine, 376; *Brown* v. *Lawton*, 87 Maine, 83.

"It is undoubtedly the law that an agreement between mortgagee and mortgagor or those holding their respective interests, to extend the time of redemption, although not in writing nor supported by any other consideration than the promise of the redemptioner when such an agreement has been acted upon so far that the parties cannot be placed "in statu quo" is not within the statute of frauds and is

binding upon the parties. If within the period the mortgage debt is paid or tendered it has the same effect as though done prior to the time the equity would have otherwise expired. *Dow* v. *Bradley,* supra. In *Chase* v. *McLellan,* supra, the language of the court is especially applicable to this case "When the evidence is examined it is manifest that McLellan was influenced by a wish to obtain the payment of his notes and to do this he was not disposed to exact of the complainant his strict legal rights provided a short delay would enable the complainant to redeem. The extension of the time was definite and fixed and the mortgage was open so far and not beyond it." Under the circumstances of this case the plaintiff is bound by the promise of the attorney that the defendant should have until May 13th to pay the debt. The evidence shows that the defendant promised to pay it within that time and he did. The defendant relied upon the statement made by the representation of the plaintiff to whom he had been referred as the one with whom settlement must be made.

It would be unusual for a mortgagee to look to other sources for this information and it would be grave injustice to hold that this defendant could not rely with absolute safety upon repeated assurances of a reputable attorney.

"Any agreement whether made by the debtor or the creditor for the substitution of the person advancing money for the payment of a debt as to securities, remedies or priorities of the creditor, will to the extent of the agreement be enforced in equity even against parties having intervening interests in the property held as security." Sheldon on Subrogation, Section 248.

Knight was not a volunteer. At the special instance and request of the defendant who had a perfect legal right to change his creditors, he was taking up the mortgage and the debt thereby secured in accordance with an agreement between himself and the debtor that he should stand in the shoes of this plaintiff. All that the plaintiff could ask or expect was the amount due and this the debtor had a right to pay. In behalf of the defendant, Knight was entitled to satisfy the claim against him and be subrogated to all of the plaintiff's security.

"A stranger may be subrogated to the interests of a mortgagee as against a subsequent mortgagee, or purchaser, by force of an agree-

ment made by a mortgagor at the time of paying the mortgage debt, or any part of it, to the mortgagee. This may be called a conventional subrogation." Jones on Mortgages, Section 874 A.

"Subrogation may arise by agreement between a mortgage debtor and a third person, whereby the latter upon paying the mortgage debt is substituted in place of the mortgage creditor in respect to the security." Jones, 874 A.

"A party who advances money to another that is used to discharge a valid preexisting lien on real estate, if not a mere volunteer, is entitled by subrogation to all the remedies which the original lien holder possessed as against the property; and generally where one pays or advances money to pay a mortgage debt with the understanding that he is to have the benefit of the mortgage, he becomes the holder of the lien by subrogation, although the creditor is not a party to the agreement, and thus where one advances money upon real estate security for the express purpose of paying off a mortgage, or other encumbrance, on the same property, upon the understanding, express or implied, that his security will be subrogated in place of that which he discharged, and that he should have a first lien on the property, he is not a volunteer nor is the original encumbrance considered extinguished, and, if for any reason a security turns out not to be a first lien he will be subrogated to the extent of the encumbrance paid with the money loaned by him. Cyc. 37, 471.

"A person who has let money to a debtor may be subrogated by the debtor to the creditor's rights and if the party, who has agreed to advance the money for the purpose, employs himself in paying the debt and discharging the encumbrance on land given as security, he is not to be regarded as a volunteer. The real question in all such cases is whether the payment made by the stranger was a loan to the debtor through a mere desire to aid him, or whether it was made with the expectation of being substituted in the place of the creditor; if the former is the case he is not entitled to subrogation, if the latter, he is." *Tradesman's Building Association* v. *Thompson,* 32 New Jersey Equity, 135.

"Where money is loaned under an agreement to be used in the payment of a lien on real estate and it is so used and the agreement is that the one who loans the money shall have a first mortgage lien on the same lands to secure his money and through some defect in the new mortgage or oversight as to other liens, the money cannot be

made from the last mortgage, the mortgagee has a right to be sub-rogated to the lien, which the money supplied by him has paid when it can be done without placing greater burdens upon the intervening lien holders than they would have borne if the old mortgage had been released."

*Stramen* v. *Rechtine*, 58 Ohio State, page 455. *The Home Savings Bank* v. *Bierstadt*, 168 Illinois, page 618.

"A third person who pays a debt at the debtor's request does not occupy the position of a mere volunteer. Legal subrogation springs from the mere fact of payment of another's debt, as where the debt is paid to protect the payer's rights, or as surety, guarantor or insurer; conventional subrogation springs from express agreement with the debtor, by which one pays a secured debt with the promise of receiving a lien equal to that discharged by such payment. One who, at the debtor's request, pays off a first mortgage before due with the promise of receiving a first lien for the money advanced, will be sub-rogated in equity, upon failure of the lien given as agreed, to the rights of the first mortgagees, as against a second mortgagee whose security was taken with knowledge of the first mortgage lien. The principle of conventional subrogation will be applied, in equity, as against a second mortgagee, even though the first mortgage was released of record upon the execution of a new mortgage to secure money advanced by a third person to discharge the first mortgage, where the second mortgage was not taken nor the position of the second mortgagee changed because of the record showing the discharge of the prior lien."

In the case at bar Knight had a right, as had the defendant, to rely upon the assignment of the mortgage and the endorsement of the note by the attorney. If, by reason of the fact that he lacked suffi-cient legal authority to transfer the note and mortgage, Knight should be deprived of the security he expected to obtain or the defendant should lose valuable interests in real estate by reason of the expira-tion of the foreclosure, grave injustice would be done. Under the principles, heretofore cited, Knight is entitled to be subrogated the rights of the plaintiff.

While this is an action at law, by virtue of the statute of this State, any defendant may plead in defense to any action at law in the Supreme Judicial Court, any matter which would be ground for relief in equity, and shall receive such relief, as he would be entitled

to receive in equity, against the claims of the plaintiff. This action was reported upon the evidence without any limitation of the court to the pleadings and hence the Law Court can give effect to any matter of defense disclosed by the evidence even if not pleaded.

*Insurance Company* v. *Tremblay*, 101 Maine, page 589.

*Judgment for defendant.*