JOSEPH B. FENDERSON *vs.* HARRIET N. FENDERSON.

Franklin.    Opinion October 23, 1917.

*Scope of court of equity.    Redemption of mortgages.    Waiver of foreclosure.    Rule as to the right to redeem being kept open by agreement or otherwise.*

Bill in equity in which the plaintiff prays that an account may be taken of the sum equitably due the defendant upon a mortgage for $500, and of the rents and profits, and the sums expended by her in repairs and improvements; that the plaintiff may be allowed to redeem said mortgaged premises by paying to the defendant such sum as may be found due the defendant by said account; and that the defendant may be ordered upon payment of said sum to surrender possession of said premises and execute a discharge of said mortgage to the plaintiff.

*Held:*

1.  It is the rule that, in general, a mistake of law, pure and simple, is not adequate ground for relief.

2.  If the mistake of law is not pure and simple, but is induced or accompanied by other special facts giving rise to an independent equity on behalf of the mistaken person, such as inequitable conduct of the other party, there can be no doubt that a court of equity will interpose its aid. Even when the mistake of law is pure and simple, equity *may* interfere.

3.  A court of equity will not permit one party to take advantage and enjoy the benefit of an ignorance or mistake of law by the other, which he knew of and did not correct. While equity interposes under such circumstances, it follows, *a fortiori,* that when the mistake of law by one party is induced, aided, or accompanied by conduct of the other more positively inequitable, and containing ele-

ments of wrongful intent, such as misrepresentation, imposition, concealment, undue influence, breach of confidence reposed, mental weakness, or surprise, a court of equity will lend its aid and relieve from the consequences of the error.

4.  The right to redeem mortgaged real estate may be kept open by express agreement of the parties, or by circumstances from which an agreement may be inferred.

Bill in equity asking for an accounting of the sum that may be equitably due under two mortgages given by plaintiff, and that plaintiff may be allowed to redeem said mortgages.   Cause heard upon bill, answer and replication.   By agreement of parties, at the close of the testimony the case was taken to the Law Court upon report. Judgment in accordance with opinion.

The case is stated in the opinion.

*Robert Doe,* of the New Hampshire Bar, *George F. Gould, and Frank W. Butler,* for plaintiff.

*Richards & Rollins, and George C. Wheeler,* for defendant.

SITTING: CORNISH, C. J., BIRD, HANSON, PHILBROOK, MADIGAN, JJ.

HANSON, J.  Bill in equity in which the plaintiff prays that an account may be taken of the sum equitably due the defendant upon a mortgage for $500. on the real estate hereinafter referred to, and of the rents and profits, and the sums expended by her in repairs and improvements; that the plaintiff may be allowed to redeem said mortgaged premises by paying to the defendant such sum as may be found due the defendant by said account; and that the defendant may be ordered upon payment of said sum to surrender possession of said premises and execute a discharge of said mortgage to the plaintiff.

The case is reported for the "determination of this court upon so much of the evidence as is legally admissible, the court to render such judgment as the law and equity require."

In February, 1911, the plaintiff was the owner of certain real estate in Scarboro, in the County of Cumberland, which was a portion of farm formerly owned in common and undivided, by the plaintiff and his father, Nathaniel B. Fenderson.   In 1909 that part of the farm involved in this suit was set off to the plaintiff as his half.   The barn

and outbuildings on the plaintiff's half were to be owned and occupied in common with Nathaniel B. Fenderson, the father, and the house and connected shed on the father's portion of the farm were to be owned and occupied in common with Joseph B. Fenderson, the plaintiff, and expense of repairs to be equally divided. The father's interest later became the property of Albion L. Fenderson, now deceased, brother of the plaintiff, and husband of the defendant.

On February 20, 1911, the plaintiff executed a mortgage on his portion of the farm in the sum of $500., payable in one year, to one Addison L. Winship. On February 27, 1911, said Winship assigned the mortgage to Frank W. Woodman. Interest on the mortgage was paid to February 20, 1914. On July 8, 1914, said Woodman commenced foreclosure of said mortgage by publication. On October 12, 1914, said Woodman assigned the mortgage to the defendant. The plaintiff, on April 15, 1912, mortgaged the same premises to his brother, the defendant's husband, Albion L. Fenderson, for $1,000 / on one year, and subject to the $500. mortgage first mentioned. On the death of Albion L. Fenderson, the defendant qualified as executor of his estate, and the last named mortgage came into her possession as executrix of said estate.

On November 6, 1914, the defendant, as executrix, commenced two suits against the plaintiff, one a real action in the Supreme Judicial Court for Cumberland County to foreclose the $1,000 mortgage, the other on the note secured by that mortgage, returnable in the County of Franklin.

The history of the case thus far is undisputed. The solution of the question raised by the bill and answer depends upon the equities, if any, arising and resulting from what was said and done at a meeting between the parties hereto, on the farm in question, in June before the foreclosure of the $500. mortgage would expire on July 8, 1915.

For a better understanding of the plaintiff's position, it may be well to state that the attorney who foreclosed the $500. mortgage, and who later acted as attorney for the plaintiff in the suits at law before mentioned, had informed the plaintiff that on account of an error in the later proceedings in connection with the suits referred to, the time for redemption would be extended so that he would have a year from the following September in which to redeem. It is not urged, however, that the advice of counsel operates in favor of the plaintiff's position.

It is admitted that the parties met on the premises in June, 1915, and the record shows the plaintiff's account of the meeting: ''Q— State just what was said about the foreclosure? A—In general conversation the mortgage was brought up, and I told her I was going to pay her all the money that was due before the September Term of court, and I says, 'I am advised by counsel that I have until the September Term of Court and another year for redemption,' 'but', I says, 'I shan't take a year. I will have it paid by the September Term of Court.' Q—What did she say? A—She says, 'Yes', and looked at me and didn't say anything else. Only general conversation.''

The defendant admits the meeting, but denies that such conversation took place, or that the $500. mortgage was referred to, but we are persuaded that the conversation was substantially as claimed by the plaintiff, and the testimony of Mr. Doe in relation to a second meeting of the parties in October at Farmington leaves no doubt as to the subject of the conversation in June. Mr. Doe testified,—''in the course of the conversation Joe called her attention to the fact that he had a talk with her on the farm in June preceding and said 'you know Hattie at that time I told you that I had until the September Term to pay up these mortgages and a year of redemption even after that,' and she says, 'I know that, but I came home to Farmington and asked Mr. Richards if you had a year in which to redeem the $500. mortgage and he told me you did not.' '' This testimony of Mr. Doe is denied also by the defendant, who says that she knew the foreclosure would expire in July, knew it when she talked with the plaintiff in June, and had no occasion to ask Mr. Richards when the foreclosure would expire.

The case shows that the plaintiff acted upon the belief set out in the bill, and began negotiations through a bank in New Hampshire to procure money to pay all his indebtedness to the defendant; that he succeeded in doing so, and the preliminary work was done and notes and mortgage prepared and in readiness for execution in September, when further action on his part was rendered unnecessary by the defendant's refusal to consent to the redemption. The testimony discloses further that on July 28 the defendant sent the plaintiff an account of repairs and demanded payment. The plaintiff claims he was misled, to his injury, by the silence of the defendant when she should have spoken. The defendant asserts that while a conversa-

tion was had in June, it related to the $1,000. mortgage and not to the $500. mortgage, and the only question presented is this:  Is the defendant now equitably estopped from insisting upon a strict foreclosure of the $500. mortgage?  The defendant contends that the conversation in June, 1915, (1) does not show an agreement to extend the time for redemption, (2) nor does it show any conduct on the defendant's part which would estop her to claim that foreclosure was completed on July 8, 1915, and further, (3) that the action was not brought within the statutory period, and (4) that even if the plaintiff's contention is correct that the conduct of the defendant did amount to misrepresentation, the misrepresentation was one of law, on which the plaintiff had no right to rely.

Counsel for the defendant has cited *Carll* v. *Kerr*, 111 Maine, 365, as being directly in point, and urges the observance of the rule emphasized therein that "the time in which a mortgage may be redeemed is clearly fixed by statute and the court cannot enlarge it." That is now the well nigh universal rule and this court has not varied in following it.  But while the court may not enlarge the time, the parties may do so, and the inquiry here is whether or not the parties have enlarged the time, and whether this court in the exercise of its equity powers has authority to consider all the facts and circumstances which help to show what is right and just between the parties and having found what is equitably right, to enforce it.

A careful study of the testimony can lead the mind to but one conclusion.  The plaintiff owned the equity in his part of the family homestead.  He had delayed payment of the amount due on the outstanding mortgages from causes over which he apparently had no control; he was involved in financial troubles, but desired to redeem the property, and made his intention clear to the defendant.  The conversation in June shows this plainly, and it as plainly appears that he believed his right to redeem had been extended beyond the statute limitation on account of the pending litigation in which all his property had been attached, and in reference to which his counsel had advised him as above.  While so understanding his rights, if nothing further were presented as a reason for equitable interference, he would be entitled to no relief.  But the parties met and had the conversation detailed herein, and we are persuaded that the testimony justifies the plaintiff's claim that then and there words were spoken on the part of both the parties which, together with the conduct of

each in respect to the $500. mortgage foreclosure then nearly completed, and in view of the defendant's admissions as to her knowledge that foreclosure would be perfected, and her silence in respect thereto, justified him in believing as he did believe, that the time had been extended and that she was assenting thereto.  And we must hold that she did assent, and that she is now equitably estopped to claim a strict foreclosure of the $500. mortgage.  The case presents a series of facts unlike any other cited from our own decisions, and in our view one where equitable relief should be granted if ever extended by the court.  The defendant, with full knowledge of her own rights, in conversation with the plaintiff, who had so far been misled as to his rights, and when the same is made known to her, adds to his ignorance and misfortune by at least assenting to his misunderstanding, has brought herself within the class which cannot be allowed to profit by their own wrong.  She knew he had been misled, she knew he was further misled when she left him, and remained silent when she should have spoken.  That he believed the defendant had assented to the extension is borne out by all that has since occurred. Her conduct was of such a character as would naturally have the effect of influencing the action of the plaintiff.  It is not urged, nor is it necessary to hold, that the defendant had an actual intention to mislead or deceive the plaintiff in the conversation in June.  We are not concerned with that.  We are concerned, however, in preventing that which, if allowed, would work a manifest fraud upon the plaintiff. *Lewenburg* v. *Hayes*, 91 Maine, 105; *Brown* v. *Lawton*, 87 Maine, 83; *Martin* v. *Maine Central R. Co.*, 83 Maine, 100; Pomeroy's Equity, 3rd edition, Sections 802-3; *Rogers, Assignee*, v. *Portland & Brunswick St. Ry.*, 100 Maine, 93; *Holt* v. *N. E. Tel. & Tel. Co.*, 110 Maine, 12.

As to the contention that the complaint was not brought within the statutory period, in which the time limit is one year after the first publication, in this case July 8, 1914, when the complaint is filed nearly two years later, the rule is stated in *Schroeder* v. *Young*, 161 U. S., 334-344, as follows: "Defendant relies mainly upon the fact that the statutory period was allowed to expire before this bill was filed, but the court below found in this connection that before the time had expired to redeem the property, the plaintiff was told by the defendant Stephens that he would not be pushed, that the statutory time would not be insisted upon, and that the plaintiff believed and relied upon such assurance.  Under such circumstances the courts

have held with great unanimity that the purchaser is estopped to insist upon the statutory period, notwithstanding the assurances were not in writing, and were made without consideration, upon the ground that the debtor was lulled into a false security." It will be noticed that in *Carll* v. *Kerr*, supra, on which defendant's counsel relies, the circumstances were not the same, and stop short of the vital stage reached in the case at bar. In that case the mortgagee's attorney inquired by telephone of the Register of Deeds as to the date of the first publication of the notice of foreclosure, and by mistake the Register of Deeds gave him the date of the last publication. There the plaintiff intended to redeem, but on account of misinformation from the Register of Deeds let the foreclosure expire. There is no pretense that the defendant in that case did anything, or said anything, or withheld anything to the injury of the plaintiff. The cases are clearly to be distinguished in facts and in principle.

As to the first contention of the defendant that the misrepresentation, if one was made, was a mistake of law. Assuming, but not conceding, that the initial mistake into which the plaintiff was led, was a mistake of law, and his rights were considered upon that phase alone, he would have no standing in equity, for it is the rule that, in general, a mistake of law, pure and simple, is not adequate ground for relief. Pomeroy's Equity, Jur. 3rd ed., Section 842. That authority, however, in treating the same subject, lays down the rule, "that if the mistake of law is not pure and simple, but is induced or accompanied by other special facts giving rise to an independent equity on behalf of the mistaken person, such as inequitable conduct of the other party, there can be no doubt that a court of equity will interpose its aid. Even when the mistake of law is pure and simple, equity *may* interfere." In further discussion of the subject the text writer says: "A court of equity will not permit one party to take advantage and enjoy the benefit of an ignorance or mistake of law by the other, which he knew of and did not correct. While equity interposes under such circumstances, it follows, *a fortiori*, that when the mistake of law by one party is induced, aided, or accompanied by conduct of the other more positively inequitable, and containing elements of wrongful intent, such as misrepresentation, imposition, concealment, undue influence, breach of confidence reposed, mental weakness, or surprise, a court of equity will lend its aid and relieve from the consequences of the error. The decisions illustrating this general rule

are numerous, and it will be found that many of the cases in which relief has been granted contain, either openly, or implicitly, some elements of such inequitable conduct." Idem, Sec. 847, citing *Jordan* v. *Stevens*, 51 Maine, 78; *Freeman* v. *Curtis*, 51 Maine, 140; *Spurr* v. *Benedict*, 99 Mass., 463; *Chestnut Hill, etc., Co.* v. *Chase*, 14 Conn., 123; *Woodbury, etc., Bank* v. *Charter Oak. Ins. Co.*, 31 Conn., 517. See *Tarbox* v. *Tarbox*, 111 Maine, 381.

Our conclusion is in harmony with an unbroken line of decisions of this court, the latest expression being found in *Thomas* v. *Hall*, 116 Maine, 140, 100 Atl. Rep., 502, where it is held that the right to redeem mortgaged real estate may be kept open by express agreement of the parties, or by circumstances from which an agreement may be inferred.

The entry will be,

> *Bill sustained with costs.*
> *Decree in accordance with this opinion.*