JOHN CHAPLIN *vs*. AMOS F. GERALD et als.

Sagadahoc.     Opinion June 29, 1908.

*Written Contracts.   Oral Contract as Collateral to Written Contract.   Clear and Convincing Evidence Required to Establish such Oral Contract. Written Contract not to be Varied by Oral Evidence,   When.*

When a plaintiff attempts to establish an oral agreement as collateral to a written one, the scales of proof at the start are materially borne down against the plaintiff by the presumption that the written contract contains the whole agreement, and the plaintiff should be required to adduce clear, strong and convincing evidence to outweigh such presumption, otherwise the stability of written contracts will be impaired and resulting confidence therein destroyed.

July 23, 1902, the plaintiff lost his right foot in a collision between two cars on the defendants' street railway, one of which he was operating as a motorman. He did not bring any action to recover damages for his injuries. Also the defendants denied all liability in the matter. February 9, 1903, the plaintiff received and accepted from the defendants the sum of $1000 and at the same time an instrument under seal and of the following tenor was executed in duplicate:

"In consideration of the sum of one thousand dollars ($1,000) to me in hand paid, the receipt whereof I herewith acknowledge, I, John Chaplin, of Topsham, Maine, for myself, my heirs and assigns, do hereby release Amos F. Gerald, E. J. Lawrence, A. B. Page, S. A. Nye, Henry M. Soule and Cyrus W. Davis, associates, and also the Portland & Brunswick Street Railway, from any claim by me of any name or nature in the past or at

the present time, or that may arise in the future : by reason of the accident occurring during the summer of 1902, at or near Mallet's Gulley, so called, in Freeport, Maine, in which accident I sustained the loss of my right foot; and in consideration of the above payment, Amos F. Gerald, for the associates, Cyrus W. Davis, Treasurer Portland & Brunswick Street Railway, for the Portland and Brunswick Street Railway, and John Chaplin for myself, my heirs and assigns, agree together by our signatures herewith affixed, that the above settlement shall be final and conclusive, made in duplicate this ninth day of February A. D. 1903." This instrument was duly signed by the defendants, Gerald and the Portland & Brunswick Street Railway, and also by the plaintiff. The plaintiff claimed that at the time the aforesaid instrument was executed the defendants orally agreed in addition to the $1000, named in the aforesaid instrument as the consideration therefor, to furnish him employment at $65 per month so long as he could work and that afterwards having entered the employ of the defendants he continued to work for them until March 2, 1904, when he was wrongfully discharged. The plaintiff then brought an action of assumpsit to recover damages for breach of the alleged oral contract. The defendants denied that any such oral contract was made. The jury returned a verdict for the plaintiff for $6944.19.

*Held:* (1)   That to establish by parol evidence such an extraordinary agreement, as a part of the consideration for the aforesaid written release, wherein it was stipulated to be given in consideration of the sum of $1000, the proof must rise above the mere conflict of testimony and become clear, convincing and conclusive.

(2)   That the unsupported testimony of the plaintiff, resting only upon his memory of a conversation that occurred four years before the trial, was not such clear, convincing and conclusive proof as should be required to establish a contract so indefinite in its term of duration and so unreasonable and improbable, as that upon which the plaintiff's action was founded.

(3)   That the finding of the jury that such a contract was made was so manifestly against the weight of evidence that it ought not to stand.

Although in the case at bar no exception was taken to the admission of the testimony of the plaintiff that the defendants agreed, in addition to the $1000 expressed in the release as the consideration therefor, to furnish him employment so long as he should be able to work, and consequently the question of the admissibility of such testimony was not directly raised, yet the court is of the opinion that the plaintiff's testimony was subject to the general rule that oral evidence will not be received to add to or vary the terms of a written contract which is complete on its face and appears to embrace an entire contract between the parties, and that the plaintiff's testimony was not competent..

On motion by defendants.   Sustained.

Action of assumpsit to recover damages for breach of an alleged oral contract to furnish the plaintiff employment at $65.00 per

month so long as he could work. The action was against "Amos F. Gerald, E. J. Lawrence and S. A. Nye and A. B. Page, all of Fairfield, in the County of Somerset and State of Maine, Cyrus W. Davis and Henry M. Soule, all of Waterville, in the County of Kennebec and said State, Associates, and the Portland and Brunswick Street Railway, a corporation created by law and having its office at Waterville, in the County of Kennebec and said State of Maine." Writ dated September 9, 1905. Ad damnum $10,000. Plea, the general issue with brief statement alleging "that the contract declared on was not in writing and no memorandum thereof was signed by the defendants to this suit or either of them."

Tried at the April term, 1907, Supreme Judicial Court, Sagadahoc County. Verdict for plaintiff for $6944.19. The defendants then filed a general motion to have the verdict set aside.

The case appears in the opinion.

*Foster & Foster, and C. E. Sawyer*, for plaintiff.

*Edward W. Wheeler, and Wm. H. Newell*, for defendants.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, JJ.

KING, J. This cause is before the court on defendants' motion to set aside a verdict against them of $6944.19 rendered in an action of assumpsit for breach of an alleged oral contract to furnish the plaintiff employment at sixty-five dollars per month so long as he could work.

July 23rd, 1902, the plaintiff sustained the loss of his right foot in a collision between two cars on the defendants' railway one of which he was operating as motorman. No action for damages was brought for his injuries, but on the 9th of February 1903, he met the defendants in Waterville at the office of Mr. Davis, where he received from them $1000, and the following contract or agreement was executed in duplicate:

"In consideration of the sum of one thousand dollars ($1000) to me in hand paid, the receipt whereof I herewith acknowledge, I, John Chaplin, of Topsham, Maine, for myself, my heirs and assigns

do hereby release Amos F. Gerald, E. J. Lawrence, A. B. Page, S. A. Nye, Henry M. Soule and Cyrus W. Davis, associates, and also the Portland & Brunswick Street Railway, from any claim by me of any name or nature in the past or at the present time, or that may arise in the future : by reason of the accident occurring on the line of the Portland & Brunswick Street Railway during the summer of 1902, at or near Mallet's Gulley, so called, in Freeport, Maine, in which accident I sustained the loss of my right foot; and in consideration of the above payment Amos F. Gerald, for the associates, Cryus W. Davis, Treasurer, Portland & Brunswick Street Railway, and John Chaplin for myself, my heirs and assigns, agree together by our signatures herewith affixed that the above settlement shall be final and conclusive. Made in duplicate this ninth day of February A. D. 1903.

> A. F. GERALD (Seal)
> PORTLAND & BRUNSWICK STREET
> RAILWAY
> by Cyrus W. Davis (Seal)
> JOHN CHAPLIN (Seal) "

In his action the plaintiff alleges that at the time the above release was executed the defendants "promised him that if he would sign a certain acknowledgment of satisfaction, and accept the sum of one thousand dollars in money, they, on their part, would pay him one thousand dollars and give him employment at sixty-five dollars per month as long as he could work :" that afterwards he did "enter the employ of the defendants at their car barn and power house at Freeport, Maine, and continued in their employ in a faithful attempt to perform his duties for them until the second day of March 1904," when he was wrongfully dismissed. The writ is dated September 9, 1905.

The defendants contended that no such oral agreement was made, that the plaintiff became so inefficient, remiss and negligent in his work that his discharge was justifiable, but that in fact he secured a position elsewhere and left their employ without being discharged.

The testimony of the plaintiff in support of the alleged oral agreement is contained in his answer to the following question :

Q.    Now, what other consideration other than that contained in the writing, was offered you at that time?

A.    Mr. Davis had a clerk read that paper to me and then passed it to me and asked me if I would sign it.    I says, "I don't hardly think I can.    It don't look to me as if there was anything after the bills were paid."    He says, "Look here, we are going to employ you; we are going to make a further agreement from that paper and give you a chance to work in the Freeport car-barn and give you $65 a month, same as you were getting when you were hurt, and give you employment as long as you are able to do any work."    "Furthermore," he says, "there will be no time, if we should sell out the Brunswick and Portland Railroad, there will be no time but some one of us men are doing business and we will see you have a job."    "If you are going to use me that way it is all right;" I says "I don't think I should sign that paper for $1,000 unless I have a writing for my continuing labor."    They says, "You don't mean to doubt our word, do you?"    I says, "No sir; if you say you will honestly and justly give me $65 a month as long as I am able to work to earn my living, I will sign the paper."    Mr. Page says, "We will certainly do that, Jack, just as we say we will."

No exception was taken to the admission of this testimony.    The general rule that oral evidence will not be received to add to or vary the terms of a written contract applies, we think, to such a release as the one above quoted.

The only exception to the rule is found where from an inspection of the instrument it appears to be incomplete and not to embrace the entire contract.    In such case resort may be had to oral testimony to supplement but not to vary or contradict the written instrument.

The instrument in the case at bar is not incomplete but comprehensive and appears to embrace an entire contract between the parties. It is not merely a receipt for money, which may be explained by parol ; on the contrary, it is a formal release witnessing in plain and explicit terms an agreement discharging the defendants from all liability to the plaintiff for the injury he had received and which was

to "be final and conclusive." The testimony of the plaintiff that the defendants agreed in addition to the $1000, expressed as the consideration for the release, to furnish him employment as long as he should be able to work is, we think, inconsistent with and tends to vary and contradict the written instrument.

*Myron* v. *Union Railroad Co.*, 19 R. I. 125; *White* v. *Richmond & D. R. Co.*, 110 N. C. 456 (15 S. E. R. 197); *Horn* v. *Miller*, 142 Pa. St. 557; *The Cayuga*, 95 Fed. R. 483; *James* v. *Bligh*, 11 Allen, 4; *Goss* v. *Ellison*, 136 Mass. 503.

The above authorities are cited not merely in support of the general rule but as showing its applicability to the case at bar.

However, in view of the fact that the question of the competency of this testimony is not presented by exceptions, and upon which counsel have not been heard, we pass to a consideration of the motion for a new trial upon the evidence as presented to the jury.

It is of the utmost importance, we think, in passing judgment upon conflicting testimony in cases where an attempt is being made to establish an oral agreement as collateral to a written one not to forget the old and salutary rule that when parties reduce their contract to writing the law presumes that the writing contains the whole agreement.

In such cases the scales of proof at the start are materially borne down against the plaintiff by that presumption. He should, therefore, be required to adduce clear, strong and convincing evidence to outweigh it, otherwise the stability of written contracts will be impaired and resulting confidence therein destroyed.

The oral agreement, as claimed to have been made at the meeting in Waterville, is most extraordinary. The defendants did not admit liability on account of the accident to the plaintiff. The $1000 paid over to the plaintiff by the defendants was made up of the amount of the plaintiff's lost time between the time of the accident and February 9, 1903, at full wages, his expenses for medical attendance, nursing, etc. But, notwithstanding a denial of liability on the part of the defendants, and the payment of the $1000, the plaintiff claims that the defendants further agreed to furnish employment for him so long as he should be able to work.

The full import and meaning of the alleged oral agreement is now clearly manifested by what has since transpired as the result of it. The services of the plaintiff while in the defendants' employment after Feb. 9th, 1903, were unsatisfactory, at least, and the cause of much annoyance to them. The cessation of those services has produced litigation resulting in this verdict of $6944.19 as damages for the alleged breach of that oral agreement.

To establish by parol evidence such an extraordinary agreement, as part of the consideration for a written release, wherein it is stipulated to be given in consideration of the sum of one thousand dollars, the proof "must rise above the mere conflict of testimony and become clear, convincing and conclusive." *Liberty* v. *Haines*, 103 Maine, 182.

All the individual defendants, except Henry M. Soule, viz: Amos F. Gerald, E. J. Lawrence, S. A. Nye, A. B. Page, and Cyrus W. Davis were present at the Waterville conference of Feb. 9th, 1903, and J. W. Amick, a director of the railway company, was also present.

Page, Gerald and Amick were witnesses at the trial; Lawrence and Nye were sick, and Davis was in New York. Each of these witnesses in defense testified that no such oral agreement was made. We deem it useful to quote in part some of their testimony.

Mr. Page testified :

Q.   Who suggested the basis of settlement between you and your associates and Mr. Chaplin, at this conference at Waterville on February 9, 1903? A.   Mr. Chaplin.   Q.   Will you explain to the jury exactly what his proposition of settlement was made at that time? A.   In a general way, he said his medicine cost so much, his doctor's bills were so much, he had been out of employment so long, and he ought to have a thousand dollars.   Q.   Did he at that time name any other sum? A.   No.   Q.   Was his proposition accepted by you and your associates? A.   It was.   Q.   Did you or any of your associates that were present at that conference tell Mr. Chaplin whether or not you recognized any liabilities from his injuries? A.   We did.   Q.   What did you say to him? A.   We told him we didn't consider we were in any way liable for

VOL. CIV 13

the accident.   Q.   Was any promise, or agreement made by you, or your associates, as a consideration of Mr. Chaplin's signing this written contract or release, except the consideration of one thousand dollars, stated in the paper?   A.   None whatever.   Q.   Was any promise made by you, or your associates, that Mr. Chaplin should have employment by you?   A.   None whatever, except in a general way.   Q.   Was anything said about his having wages at $65 a month?   A.   I think not.   Q.   Or that he should have employment as long as he was able to work?   A.   It never was mentioned.   .   .   .   Q.   Did Mr. Chaplin request you and your associates to agree with him. that he should have employment?   A.   Yes sir, he asked us.   Q.   Did he ask that as a condition of his signing this agreement?   A.   He wanted it inserted in the agreement.   Q.   What answer was made to him?   A.   We refused to do it.   Q.   Did you give him any reason why you declined to do it?   A.   I think Mr. Gerald cited something about it where he had some trouble once.   Q.   What further was said about including that · in the written agreement?   A.   I don't remember, but he flatly refused to do it.   .   .   .   Q.   Will you state to the jury the entire conversation relating to Mr. Chaplin's employment by you and your associates.   A.   At that time?   Q.   Yes sir.   A.   He asked, as I remember it, if he could have a job in the car-barn, and it was assented to.   I think Mr. Gerald made the remark, if I remember right, that he had a job there which we could probably give him if he could attend to it, and was satisfactory.   Q.   Were any wages stated?   A.   Nothing.   Q.   Or the time of the employment?   A.   It was not mentioned.

Amos F. Gerald also testified:

Q.   Was there any other promise or agreement made by you and your associates with Mr. Chaplin as a condition, or consideration, of his signing this paper marked "Plff's Ex. A," except the consideration stated in the instrument itself?   A.   Nothing whatever. Q.   Was this paper written before or after Mr. Chaplin met the directors and associates in Mr. Davis's office?   A.   It was written, the whole of it, after he had been there and had discussed the amount of his bill and what he wanted, and had had a general conversation

in regard to the amount.   Q.   Did Mr. Chaplin ask that you and your associates would provide him with employment?   A.   Yes sir.   Q.   Did he ask that that promise be made to cover his employment as long as he was able to work?   A.   Yes sir, I think so.   Q.   Without any wages stipulated that he was to receive?   A.   No sir.   Q.   Did you consent to making such an agreement with Mr. Chaplin?   A.   No sir.   Q.   Was any such agreement made?   A.   No sir.   Q.   What reply did you make to Mr. Chaplin when he requested you to make such a promise?   A.   If permitted I would like to give an illustration.

COURT.   Just the conversation, what was said and done.

Q.   State the entire conversation so far as you can recollect it.   A.   I told him that we had had trouble enough in hiring men for a given length of time without any other condition connected with it, and I says we will never do it again for even a very short time. We hired a man in Bath, at the Bath car-barn, as a painter.   I hired him myself at a thousand dollars a year.   He was to take charge of the painting in the car-barn.   The man's name was Mr. Dale.   After he had been there a short time he took the notion in his head to paint the cars in another color, and any designs he saw fit, and he told me one day it was none of my business how he painted the cars.   He was boss of those cars and he told the men afterwards that I couldn't discharge him because he had been hired for a year.   I undertook to discharge him and he stayed a day or two longer, but the next time I went out he went out and didn't come back, and he commenced a lawsuit for a year's time, and I gave that as a reason for not doing it.   Q.   At that time did Mr. Chaplin request you to insert such provision as that in the written agreement for settlement?   A.   Yes sir.   Q.   And what answer did you make?   A.   I emphatically refused it, that is the reason I made the illustration.

Mr. Amick also testified that no such oral agreement was made.

Against the testimony of these three witnesses is the plaintiff's uncorroborated statement, unless, perhaps, the circumstance that he went to work in the car-barn soon after Feb. 9th, 1903, and the letters from Mr. Gerald, the general manager, in answer to his,

may have some tendency to support his position.   But the fact that the plaintiff went to work in the car-barn is not inconsistent with the defendants' contention about his subsequent employment, and for that reason can have no material probative weight in support of his testimony.

Neither do the letters of Mr. Gerald recognize any agreement to furnish the plaintiff employment, but rather the contrary is indicated therein.   In his letter of March 1, 1904, Mr. Gerald says in part:   "I always put all the power of hiring and discharging men in the Supers hands and never do it myself for they are responsible for their helps labors.   I have written Mr. Strout to act as he thinks best about letting you go.   And I think by his letter that he will do so."

It is unnecessary, were it possible within reasonable limits, to analyze all the testimony in the record and point out that which militates against the plaintiff's contention.   It is worthy of note, however, that the plaintiff asserts with emphasis that no check for the $1000, was made to him, and even when shown the cancelled check with his name endorsed upon it he denied the signature with an imputation that it was a forgery.   The significance of this testimony is not merely that it is manifestly untrue, but rather that it demonstrates the unreliability of his memory, and its apparent lack of capacity of being readily refreshed.

The Waterville conference was had more than four years before the trial—a long period through which to carry the exact words of a conversation, such as the plaintiff attempts to reproduce in his testimony.

A slight change in the words of that conversation as reproduced would account for the difference between the contentions of the parties.   The defendants admit that they assented, but without any reference to the release and entirely independent of it, to the plaintiff's request for a place to work provided he was able to attend to it and was satisfactory ; his contention is that they promised him, as a part of the consideration for the release, to furnish him employment so long as he should be able to work.

The former contention is natural, reasonable, and consistent with the situation of the parties at the time; the latter, however, is improbable, unnatural, and irreconcilable with the circumstances and conditions of the defendants.

The unsupported testimony of the plaintiff, resting only upon his memory of a conversation that occurred four years previous, is not such clear, convincing and conclusive proof as should be required to establish a contract so indefinite in its term of duration, and so unreasonable and improbable, as that upon which the plaintiff's action is founded.

And when against that unsupported testimony is placed the positive statements of the three witnesses for the defense that no such oral agreement was made by the defendants, together with the weight of that written release in which the plaintiff himself declares that the settlement therein recited "shall be final and conclusive," the conclusion is irresistible that the finding by the jury that such contract was made is so manifestly against the weight of the evidence as shown by the record that it ought not to stand.

Accordingly the entry must be,

*Motion sustained.*
*New trial granted.*