Dorothy B. GOSSELIN and Dorothy B. Gosselin, Adm'x of the Estate of Harvey
E. Gosselin, Deceased

v.

BETTER HOMES, INC.

Supreme Judicial Court of Maine.

Aug. 27, 1969.

William S. Silsby, Jr., Ellsworth, for plaintiff.

Errol K. Paine, Bangor, for defendant.

Before WILLIAMSON, C. J., and WEBBER, DUFRESNE, and WEATHERBEE, JJ.

DUFRESNE, Justice.

On appeal by the defendant, Better Homes, Inc., from the amended judgment of the court below rendered April 9, 1968 whereby the plaintiff (individually and as administratrix of the estate of her deceased husband) was permitted to redeem certain real estate from defendant's mortgage dated August 14, 1965, upon the following conditions:

"Upon payment by plaintiffs to the defendant of the amount of $14,738.61 determined to be due as of January 1, 1968, with interest at the contract rate of 8½% a year from January 1, 1968 to the date of this Amended Decree in the amount of $228.63, a total of $14,967.24, together with interest on $10,860.00 at the rate of 8½% a year from the date of this Amended Decree to the date of payment, and such payment on or before May 1, 1968, plaintiff is entitled to a discharge of the mortgage. So Ordered."

Defendant raises at the threshold of its appeal jurisdictional objections, contending that the justice below lacked the judicial power to amend his previous decree, and that, if he did have the authority to do so, he committed error in extending as he did the period of redemption. The factual background giving rise to these points of appeal may be outlined by the following recital. The court below had originally ordered redemption under a judgment dated December 28, 1967 upon condition that the amount found due and required for redemption of the mortgage be paid *by January 1, 1968*. The judgment, although filed on December 29, 1967, did not come to the attention of plaintiff's attorney, who was away on vacation, until January 11, 1968. It is true, as found by the justice below, that a copy of the judgment may have been in counsel's post-office box before the January 1st deadline as it should in the ordinary course of mail delivery. It is also true that counsel's partner who had been advised to keep a lookout for the decision and had been empowered to act if necessary did receive actual notice thereof after the holiday weekend on January 2, 1968. Plaintiff's counsel sought an amendment of the original judgment by motion dated January 12, 1968 praying "that the judgment be amended under Rule 52–B [meaning Rule 52(b)] ordering the Defendant to release all its right, title and interest in the mortgaged premises upon tender and payment on [sic] the amount of the judgment within a reasonable time." The court below granted relief under Rule 60 and under "its inherent power to prevent a great injustice," entering the foregoing stated judgment from which the defendant has appealed to this Court.

The presiding justice in granting relief under Rule 60 instead of under Rule 52(b) as requested by the plaintiff explained the reasons why he believed that the plaintiff could not obtain redress under Rule 52(b). He stated that "[t]he controversy on the Motion involves the expiration of the 10 day period under Rule 59 as compared to the reference to 10 days "after notice of findings" under Rule 52. The undersigned holds that Rule 59 governs the situation at hand, and the Motion accepted as a Motion to Alter the Judgment was not timely filed. The only way the Rule can mean anything is to compute the 10 days from the entry of judgment, not from the time

that it comes to counsel's attention." These rules in pertinent part provide as follows:

> *Rule 52(a) Effect.* "In all actions tried upon the facts without a jury or with an advisory jury, the court shall, upon the request of a party made as a motion within 5 days after *notice of the decision,* or may upon its own motion, find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; * * * If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein." [Emphasis supplied.]

> *Rule 52(b) Amendment.* "The court may, upon motion of a party made *not later than 10 days after notice of findings* made by the court, amend its findings or make additional findings and, *if judgment has been entered, may amend the judgment accordingly."* [Emphasis added.]

> *Rule 59(e) Motion to Alter or Amend a Judgment.* "A motion to alter or amend the judgment shall be served *not later than 10 days after entry of the judgment."* [Emphasis ours.]

In holding that Rule 59 governed the situation and that the plaintiff's motion even though brought as a Rule 52 motion was restricted as to timeliness to a period of 10 days from the entry of the judgment instead of 10 days from notice of the findings made by the court as specifically expressed in Rule 52(b), the presiding justice committed error. The manifest difference in the time allowance within which these motions may be made was not accidental, but purposefully intended. As Field and McKusick stated in Maine Civil Practice, Reporter's Notes:

> "Rule 52(b) permits a motion for amendment of findings only if made within 10 days after notice of the findings. This departure from Federal Rule 52(b), which measures the time from entry of

judgment, is necessary since under Rule 52(a) findings need be made only upon request."

■ Even though its immediate purpose be to amend the findings of the court, Rule 52(b) operates also as a vehicle to amend the ultimate judgment when judgment has already been entered at the time of the filing of the motion. Although it was labeled a motion to amend judgment in accordance with rule 52–B, meaning 52(b), the plaintiff's obvious purpose was to obtain an amendment of the implied finding of fact made by the court that the period from December 28, 1967 to January 1, 1968 within which the plaintiff was being given the opportunity to exercise her right to redeem by paying the amount of $14,738.-61 found due under the defendant's mortgage was a reasonable time for redemption. Rule 52(b) explicitly authorizes motions not later than 10 days after notice of findings made by the court to amend the court's findings or make additional findings and contemplates legal modification of rights already adjudicated in expressly providing for the alteration of judgments already entered as a necessary effect of revision of basic findings of fact and conclusions of the court upon reconsideration. See Leishman v. Associated Wholesale Electric Co., 1943, 318 U.S. 203, 63 S.Ct. 543, 87 L.Ed. 714. The instant motion was filed on the tenth day after plaintiff's counsel through the agency of his partner received actual notice of the court's findings. It was in fact and in law a timely motion under Rule 52(b). Plaintiff's request for relief under Rule 52(b) should have been honored.

■ The mere fact that, unknown to counsel, the court's findings may have been in the firm's post-office box prior to January 2, 1968 is immaterial. The court's definitive decree containing a memorandum of findings and decision was filed with the Clerk of Courts on December 29, 1967, and notation of the decree in the civil docket was entered at that time as provided for by

Rule 58, M.R.C.P. Rule 77(d) M.R.C.P., however, provides:

"Immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon every party who is not in default for failure to appear, and shall make a note in docket of the mailing. Such mailing is sufficient notice for all purposes for which notice of the entry of an order is required by these rules; but any party may in addition serve a notice of such entry in the manner provided in Rule 5 for the service of papers. Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 73(a)."

The docket entries show that the Clerk did not serve a notice of the entry of the judgment upon the plaintiff as required by Rule 77(d), but only that copies of the decree were forwarded to all attorneys of record by the presiding justice. The mailing of the findings and decree by the justice below to the plaintiff's attorney was not notice of the entry of judgment as provided by the rules. Under such circumstances nothing short of actual notice could start the running of the 10-day period within which the plaintiff could move for relief under Rule 52(b). The defendant has not been aggrieved procedurally and the court below had jurisdiction to amend its findings and resulting judgment.

The defendant argues that, notwithstanding Rule 52(b), where in the instant case the judgment had been entered and the time for redeeming from the mortgage as stated in the decree had passed, the period of redemption had expired and the case was finally disposed of by the court subject only to the plaintiff's right of appeal. He cites for this contention Parsons v. Stevens, 1910, 107 Me. 65, 78 A. 347. We disagree. In *Parsons,* we said:

"From the foregoing authorities, as well as from the nature of judicial proceedings, it must be held to be established as a general and necessary rule of equity procedure governing this court, that a decree once deliberately formulated, signed, entered, and filed, cannot afterward be summarily revoked or vacated on motion for alleged mistakes of a party or even of the court; but that relief from such mistakes must be sought for through the more deliberate procedure provided for review, * * *."

■ The Parsons' holding is no more law since the adoption of our Maine Rules of Civil Procedure. Rules 52(b), 59(e), 60(a) and (b) dealing with varied relief from findings and judgments replace the former practice under former rules of court or statutory provisions. See, Cousins v. Hooper, 1966, Me., 224 A.2d 836, at page 840. Rules of court have the force of law. Cunningham v. Long, 1926, 125 Me. 494, 135 A. 198; Hutchins v. Hutchins, 1939, 136 Me. 513, 4 A.2d 679; In re Knapp's Estate, 1950, 145 Me. 189, 74 A.2d 217.

■ The original judgment in the instant case was deprived, for the time being at least, of its inchoate characteristic of a final judgment upon the timely filing of a Rule 52(b) motion. Such pleading suspends the appealability of the judgment until the motion is denied, and if relief is granted, then the amended judgment becomes the final judgment and is the only one appealable. See Gaudiosi v. Mellon, 1959, 3rd Cir., 269 F.2d 873. Our rules of civil procedure were meant to facilitate the just, speedy, and inexpensive determination of the merits of issues raised and pleadings under them must be viewed not as a game of skill in which one wrong move by counsel may be decisive but rather as orderly steps to be taken in securing an early and just final adjudication of the rights of the parties to the litigation. See Foman v. Davis, 371 U.S. 178, 1962, 83 S.Ct. 227, 9 L.Ed.2d 222. It is in that spirit that Rule

52(b) was intended to permit corrections of findings and judgment before finality fully attached with resulting avoidance of appeals and the necessary delay incidental thereto.

The court was justified in amending the findings and decree. As knowledge of the court's decision, judgment, findings of fact and conclusions of law, reached plaintiff's counsel, the period of redemption established by the decree had already run out. If plaintiff could not get relief in the way of an amended finding and judgment concerning the reasonable period of time within which the plaintiff could redeem from the defendant's mortgage, then the plaintiff stood to lose a substantial equity in real estate without any fault to be ascribed to herself or counsel. The court's finding of fact respecting the short period of time for redemption from December 29, 1967 to January 1, 1968 was undoubtedly influenced by the mutual mistake of the parties initiated by the defendant, perpetuated by the plaintiff and obviously adopted by the court, that the mortgage foreclosure had been commenced in January, 1967, whereas in truth and in fact the statutory year of redemption had expired at the time of the court's decree. Indeed, for the first time in the case, the motion for relief under Rule 52(b) revealed the correct date of first publication (the starting time of the statutory one-year period of foreclosure under 14 M.R.S.A. § 6204) to be December 20, 1966.

But did the court lose jurisdiction of the subject matter on the expiration of the year of redemption? 14 M.R.S.A. § 6204 provides that "[t]he mortgagor or person claiming under him may redeem the mortgaged premises within one year after the first publication or the service of the notice mentioned in section 6203, and if not so redeemed, his right of redemption is forever foreclosed." The rights of the plaintiff-mortgagor to redeem from the defendant's mortgage, so far as the instant proceedings are concerned, are defined by 14 M.R.S.A. § 6301:

"Any mortgagor or other person having a right to redeem lands mortgaged may demand of the mortgagee or person claiming under him a true account of the sum due on the mortgage, and of the rents and profits, and money expended in repairs and improvements, if any. If he unreasonably refuses or neglects to render such account in writing, or in any other way by his default prevents the plaintiff from performing or tendering performance of the condition of the mortgage, *he may bring a civil action for the redemption of the mortgaged premises within the time limited in section 6204,* and therein offer to pay the sum found to be equitably due, or to perform any other condition, as the case may require. Such offer has the same force as a tender of payment or performance before the commencement of the action. *The action shall be sustained without such tender, and thereupon he shall be entitled to judgment for redemption* and costs." [Emphasis supplied.]

A literal interpretation of section 6301 would readily lay to rest this seriously-advanced claim of the defendant-mortgagee, since the action to redeem was brought within the year after the first publication of public notice of the defendant's mortgage-claim on the real estate involved and since the statute provides unconditionally that upon proof of unreasonable refusal or neglect by the mortgagee to render a true account upon demand, the action for redemption if timely shall be sustained without pre-suit tender and thereupon the mortgagor shall be entitled to judgment for redemption. It is forcefully represented that we should construe section 6301, pertaining to redemption of real estate from mortgage, in the same manner that our Court in Boothby v. Bangor Commercial Bank, 1849, 30 Me. 361, interpreted the statute permitting redemption of real estate from levy of execution. We do recognize that there is some apparent analogy between the statutes. In *Boothby,* our Court had before it section 28, of chapter 94 of

the 1840 laws, which provided that "[i]nstead of a writ of entry, the debtor may bring a bill in equity for redemption, in the supreme judicial court, at any time within one year after the levy, whether he has made any tender or not, * * * and the court shall ascertain the amount due, unless the same shall have been adjudged, by three justices of the peace, as before mentioned, and require the debtor to bring such amount into court for the creditor's use; * * *" The Court there ruled that the debtor or his assignee, if he would elect to proceed by a bill in equity, must do so in sufficient season to have the amount ascertained and brought into court for the acceptance of the creditor or his assignee, before the year allowed to redeem has expired. This judicial construction of the statute was expressly adopted by the Legislature of 1857, and the act regulating redemption of real estate from levy of execution was made to read as follows: (c. 76, § 25)

"Instead thereof, the debtor, without any tender, may within one year, and in season to have the amount ascertained, and paid or tendered within the year, file a bill in equity, therein offering to pay the amount due, and the court shall ascertain it, and require the debtor to bring it into court for the creditor, * * *"

These redemption statutes, although bearing some analogy between themselves, are not of similar import, either in structure or purpose. The redemption-from-levy-on-execution statute merely provided the debtor with a substitute single proceeding, as this Court said in *Boothby,* for the other dual procedure of having the amount due ascertained first by a panel of 3 justices of the peace and the subsequent use of the writ of entry to recover the premises upon failure of the creditor to release them within 10 days following tender of the adjudicated indebtedness. The ascertainment of the amount due and its tender within the year of the levy under either method of relief was intended a condition precedent to redemption under that statute. 14 M.R.

S.A., §§ 2102, 2103 and 2104. The redemption-from-mortgage statute never provided for alternative remedies such as in the case of redemption from levy on execution. The equitable relief through bill of redemption was the single avenue of redress provided by the Legislature, whether following tender of the amount due (Laws of Maine, 1821, c. XXXIX) or refusal or neglect to state on request an account of the mortgage debt. (P.L.1837, c. 286). In Fogg v. Twin Town Chevrolet, Inc., 1937, 135 Me. 260, 194 A. 609, where a bill in equity based on section 15 of c. 104, R.S. 1930, providing for an accounting and redemption was brought on the day following the expiration of the one-year period of redemption, our Court denied relief but made it obvious by way of a clear dictum that the remedial action would have been available notwithstanding the expiration of the period of redemption, provided that a demand for an accounting had been made and the bill had been brought prior thereto.

"In the instant action, [said the Court] based on section 15 providing for an accounting and redemption, neither the plaintiff nor anyone in his behalf made any demand whatever for an accounting. Had that been done, and had there been an unreasonable refusal or neglect upon the part of the defendant to render such account in writing, the bill would have been maintainable within the year without tender; * * *"

Such relief has been permitted without the issue being raised in the case of Sposedo v. Merriman, 1914, 111 Me. 530, 90 A. 387. In Doyle v. Williams, 1940, 137 Me. 53, 15 A.2d 65, bills to redeem were remanded after the expiration of the period of redemption and after the time allowed by the statute for filing a new bill in equity, so as to permit an amendment introducing in the pleadings allegations respecting a demand for an accounting during the period. To the same effect, see Miller v. Ward, 1913, 111 Me. 134, 88 A. 400.

The defendant quotes the language of this Court in support of his contention: "The time in which a mortgage may be redeemed is clearly fixed by statute and the court cannot enlarge it." McPherson v. Hayward, 1889, 81 Me. 329, 17 A. 164; Carll v. Kerr, 1914, 111 Me. 365, 89 A. 150; Fenderson v. Fenderson, 1917, 116 Me. 362, 102 A. 69; Inhabitants of Town of Lincolnville v. Perry, 1954, 150 Me. 113, 104 A.2d 884. It is true that our courts of equity have no independent jurisdiction to enlarge the statutory period of redemption from mortgage on grounds which in other areas might provide equitable relief, except as pointed out in *Inhabitants of Lincolnville,* supra, where the parties themselves have enlarged the time or where an estoppel to deny that a party has enlarged the time may be set up from that party's acts, words or conduct amounting to fraud. But the lawmakers themselves have made the period of redemption subject to control by a court of equity within the terms of the statute respecting actions to redeem, and in such cases "to render such a decree as substantial justice requires between the parties." Pitman v. Thornton, 1876, 66 Me. 469, 470. We rule that the lower court had jurisdiction to adjudicate a period of redemption beyond the statutory one-year provision under the circumstances of the instant case.

The presiding justice with ample support in the evidence found the following pertinent facts. Plaintiff and her now deceased husband in 1964 entered into negotiations with the corporate defendant's president and representative to build them a home, the foundation thereof being installed prior to the execution of any written contract between the parties. After the commencement of construction in July 1965 Mr. and Mrs. Gosselin were asked to, and did, execute a written order, entitled original contract, wherein the following terms appeared:

"Build Shell house on above foundation (presently built by Better Homes) to include 3 bedrooms, kitchen, bath, heating unit. No inside work to be furnished by Better Homes but paneling or shell work to be furnished for others to finish.

"Estimate of above job to be $16,000 $\frac{00}{}$ to $18,000 $\frac{00}{}$ This contract to be secured by 2nd mortgage on Gosselin Bakery property 443–5 Main St. Bangor and the above property in Hudson (1st mortgage)"

The presiding justice ruled that absent the acceptance of the above order by the defendant corporation as provided by the terms of the document on the reverse side thereof "this order or agreement of August 4, 1965 is not controlling" but he did find that "[i]f the parties, at that time, contemplated a "shell" house, the defendant built more than a shell house at an alleged cost of only $720.00 over the top estimate of August 4, 1965." Neither party disputes this finding. On August 14, 1965 during the initial stages of construction Mr. and Mrs. Gosselin did sign the mortgage involved in these proceedings together with the promissory note secured thereby wherein the Gosselins promised to pay to Better Homes, Inc. the sum of $28,800.00 in 144 monthly installments of $200.00 each. Monthly payments of $200.00 were made from August of 1965 until January 22, 1966 in a total agreed sum of $1200.00. Work on the house ceased in November, 1965 without affirmative termination by either party. Defendant never submitted to the plaintiff a statement of the total construction cost of the house, nor did the plaintiff demand one after the work ceased in 1965. The presiding justice recited in his memorandum of findings that "Mrs. Gosselin states that until they received the time payment book they had no knowledge that the *ultimate* amount which the defendant claimed as secured by the mortgage was $28,800.00, and only the January 22, 1966 payment was made thereafter." The time payment book shows the principal debt as $18,720.00 with carrying charges of $10,080.00. Mrs. Gosselin was permitted to testify over the objection of the defendant to a verbal agreement collateral to the

execution of the above mentioned note and mortgage to the effect that once the building was completed and the construction costs were submitted to them, they (the Gosselins) would pay off the indebtedness or have it refinanced. The court below found that "[t]his mortgage was to secure the defendant in advance for the labor and materials to be supplied in the construction of the home, the exact amount of which was not then known. The obligation under the mortgage was to pay such amount as proved to be the cost of construction. * * On August 14, 1965 defendant agreed that plaintiffs could refinance the project when they were able to do so, which ability depended upon the sale of the business property in Bangor."

The lower court's finding that the defendant's mortgage was given by the plaintiff as security for advances to be made by Better Homes in the nature of labor and materials to be supplied in the construction of plaintiff's home, was fully justified in the evidence. Findings of fact by a single justice are conclusive when supported by credible evidence. Laskey v. L. & L. Manchester Drive-In, Inc., 1966, Me., 216 A.2d 310.

Defendant attacks the finding on the ground that it was error for the justice below, in the face of a mortgage and note absolute and definite in terms, to permit testimonial explanation thereof by proof of a collateral oral agreement or understanding at the time of the execution of the security documents. It is claimed that the court's action was in violation of the parol evidence rule and the statute of frauds, and that such collateral promise was nudum pactum unsupported by any consideration. None of these assaults have legal fortitude. We agree that when the parol evidence rule is applicable, it admits of no variation of the contract which the parties have made, and extrinsic evidence of preceding or accompanying negotiations are inadmissible to vary or to contradict, or to subtract from or add to, the language of written instruments. Norton v. Benjamin, 1966, Me., 220 A.2d 248; Card v. Nickerson, 1954, 150 Me. 89, 104 A.2d 427; Spaulding v. American Realty Co., 1922, 121 Me. 493, 118 A. 322; Bryant v. Mansfield, 1843, 22 Me. 360. The parol evidence rule is a rule of substantive law and not a rule of evidence. Burrowes Corporation v. Read, et al., 1955, 151 Me. 92, 116 A.2d 127. The law recognizes a presumption that written contracts contain the whole agreement between the parties. This presumption arises from the common knowledge and experience that when parties reduce their contractual undertakings to writing they usually and in most cases intend that the written contract contains the whole agreement between them. See, Hoyt v. Tapley, 1922, 121 Me. 239, 116 A. 559; Chaplin v. Gerald, 1908, 104 Me. 187, 71 A. 712. In *The Burrowes Corporation* case, supra, we approved the language of Professor Williston in his statement of the rule:

> "The parol evidence rule does not become applicable unless there is an integration of the agreement or contract, that is, *unless the parties have assented to a certain writing or writings as the statement of the agreement or contract between them.* Accordingly, it may be shown by parol evidence * * * that the validity of the agreement was impaired by * * * insufficiency of consideration, or failure of consideration, rendering it void or voidable; * * *"

Regardless of the procedural effect of the presumption in the instant case, the undisputed evidence of physical facts negative any mutual intent on the part of the parties that the note and mortgage in the amount of $28,800 were intended as an integration of their contract. Construction of the plaintiff's so-called "shell" house had barely commenced at the time of the execution of the security documents and the ultimate indebtedness under the proposed previous order wherein the estimate of the job was placed in the $16,000 to $18,000 range had not been ascertained. The evidence obviously reflects the mutual intent

of the parties to secure the defendant up to the amount of $28,800 for the advances in labor and materials furnished in the construction of the house, very little of which had been supplied prior to August 14, 1965. Furthermore, our Court has said in Goodspeed v. Fuller, 1858, 46 Me. 141, at pages 147–148:

"The only effect of the consideration clause in a deed, is to estop the grantor from alleging that it was executed without consideration, and to prevent a resulting trust in the grantor. For every other purpose, it may be varied or explained by parol proof. The grantor may show notwithstanding the acknowledgement of payment, that no money was paid, and recover the price in whole or in part against the grantee. * * * The amount of consideration, and its receipt, is open to explanation by parol proof in every direction. It may be shown that the price of the land was less than the consideration expressed in the deed, as in Bowen v. Bell, 20 Johns. 338, or that it was more, as in Belden v. Seymour, 8 Conn. 304, or that it was contingent, dependent upon the price the grantee may obtain upon a resale of the land, as in Hall v. Hall, 8 N.H. 129, or that it was in iron, when the deed expressed a money consideration, as in McCrea v. Purmatt, [Purmort] 16 Wend. 460, *or that no money was paid, but that it was an advancement,* as in Meeker v. Meeker, 16 Conn. 387, * * *" [Emphasis supplied.]

See also, Tyler v. Carlton, 1830, 7 Me. 175; Bourne v. Littlefield, 1849, 29 Me. 302; Bigelow v. Bigelow, 93 Me. 439, 45 A. 513. The insufficiency of the consideration for the mortgage given was open to scrutiny through parol, to show the real nature of the transaction.

 Authorities generally support the rule that parol evidence is admissible to show that a mortgage absolute on its face was in fact intended to secure future advances. Corn Belt Trust & Savings Bank v. May, 1924, 197 Iowa 54, 196 N.W. 735;

Berry-Beall Dry Goods Co. v. Francis, 1924, 104 Okl. 81, 230 P. 496; First National Bank of Raymond v. Robke, 1925, 72 Mont. 527, 235 P. 327; Johnson v. Bratton, 1897, 112 Mich. 319, 70 N.W. 1021; Wilkerson v. Tillman, 1880, 66 Ala. 532. Evidence of the circumstances surrounding the execution of the mortgage, the foreclosure of which the defendant seeks to enforce, together with the conduct and contemporaneous oral agreement of the parties, were all receivable in · evidence for the purpose of proving the real nature of the transaction. In this, the court committed no error. Nor was such evidence barred by the statute of frauds. It served not to enforce a parol undertaking respecting the sale of lands or of any interest therein, but rather tended to limit the operation of a written contract within equitable bounds. If relief were not available to the plaintiff to show the actual consideration received for the mortgage in the nature of advances of labor and materials furnished in the construction of the plaintiff's home, then the plaintiff would be subject to the forfeiture of substantial rights at the hands of Better Homes in its foreclosure of the mortgage for nonpayment of the face value thereof. The statute of frauds was enacted for the purpose of preventing frauds and a court of equity will not permit its use as a defense when such use would amount to a constructive fraud on the part of the person setting up such defense. Such would be the result in the instant case. See, McGuire v. Murray, 1910, 107 Me. 108, 77 A. 692.

Finally, the defendant raises as further points on appeal that it was error for the justice below to consider evidence of workmanship, to receive expert testimony relative to cost of repairs and to determine the mortgage indebtedness from the reasonable construction cost of the plaintiff's home.

In Johnson v. Dichiara, 1956, Fla., 84 So.2d 537, the plaintiff-contractor brought suit to foreclose a mortgage executed to secure the payment of a note given for labor and materials to be furnished in the building of an ice plant, pursuant to a contract

simultaneously executed. The construction and installation had been substantially completed as in the instant case, but there was a failure of consideration for items not installed. The court ruled that the plaintiff's lien under the mortgage should extend to the fair value of the benefits received, meaning what the owners gained and not what the plaintiff-contractor lost. Stated differently, the court there said that the chancellor should find and determine on a quantum meruit basis the value of the plant at the time of its delivery. The presiding justice below reached a similar result. He accepted the testimony of the expert witness. Accordingly he found as a fact that the reasonable construction cost of the work executed, assuming workmanlike result, was $14,250, that the amount required to bring the work done to reasonable standards of workmanship, a figure including overhead and profit, was $2,190, and that the corrective-work cost together with the unquestioned payment of $1,200 by the plaintiff to the defendant left a principal balance due to Better Homes under the mortgage of $10,860.

In adopting substantially the evidence of the expert witness respecting the reasonable construction cost of the work executed under the contractual arrangement of the parties when done in workmanlike manner and the reasonable necessary corrective costs to be incurred to bring the work performed to reasonable standards of workmanship, the presiding justice inferentially ruled that the witness had qualified upon that subject, and that such evidence was properly within the realm of expert testimony. Conley v. Portland Gas Light Co., 1904, 99 Me. 57, 58 A. 61. The witness stated that he was an engineer, architect and appraiser and that he had built approximately 3,000 homes. He supplemented his academic achievements with 40 years of experience in the field. The witness' expertise was for the presiding justice's determination as a preliminary question and his decision thereon is conclusive unless the evidence does not justify the same or unless the court's finding was based upon some error in law. The instant record exemplifies the exercise of sound judicial discretion and reveals no legal error. See, Poulin v. Bilodeau et al., 1965, 161 Me. 306, 211 A.2d 547. Costs of construction of a house or of repairs thereto may properly be proven by expert testimony. Mitchell v. Carlson, 1957, 132 Mont. 1, 313 P.2d 717; Caudle v. Swanson, 1958, 248 N.C. 249, 103 S.E.2d 357; 32 C.J.S. Evidence § 546(73), at page 292.

"The determination of the cost of certain repairs or construction is necessarily a matter of estimate by a person qualified in the class of work in question and is consequently a proper subject of opinion testimony, when given by properly qualified witnesses. Builders, contractors, or architects are competent witnesses on questions of the cost of construction or repair of buildings." 20 Am.Jur., Evidence, Sec. 833.

Although the written order on Better Homes' regular-form contract did not rise to the level of a full-fledged written agreement as found by the justice below for want of approval in writing required in the contract, it did assist in clarifying the mutual understanding of the parties concerning the building of the plaintiff's so-called "shell house" home.

"Where a party contracts to build a building for a specified purpose, the law reads into the contract a stipulation that the building shall be erected in a reasonably good and workmanlike manner and when completed shall be reasonably fit for the intended purpose." Minemount Realty Co. v. Ballentine, 1932, 111 N.J.Eq. 398, 162 A. 594.

Notwithstanding the absence of an express provision respecting the quality of the work to be done or the manner of its performance in any oral or written construction contract, the law implies therein an undertaking to perform the work in a reasonably skilful and workmanlike manner,

having regard to the general nature and situation of the projected object and the purpose for which it was manifestly designed. Hattin v. Chase, 1895, 88 Me. 237, 33 A. 989; Armstrong v. Bangor Mill Supply Corporation, 1929, 128 Me. 75, 145 A. 741. 17A C.J.S. Contracts § 329; 17 Am. Jur.2d, Contracts § 371.

▇▇▇▇▇ Where Better Homes as found by the justice below departed from its oral contract to build plaintiff's "shell" house by breaching its implied obligation to perform in a reasonably skilful and workmanlike manner, but the plaintiff received the benefit of the house, accepted it and uses the same, the defendant-contractor is entitled to receive a fair and reasonable value for the services performed not exceeding the reasonable construction cost of the house when executed in workmanlike manner. See, Rockland Poultry Co. v. Anderson, 1952, 148 Me. 211, 91 A.2d 478; Norris v. School District No. 1, in Windsor, 1835, 12 Me. 293; Jewett et al. v. Weston, 1834, 11 Me. 346. As stated in White v. Oliver, 1853, 36 Me. 92, the value of defendant's services must be estimated in reference to the contract price (here, the reasonable value of services in workmanlike manner) and the benefit derived by the plaintiff under the agreement. "The measure of damages in matters of this nature, as a general rule, is the difference in value between what is tendered as performance and what is due as performance under the contract, and this may consist of the amount required to remedy the defect." Brourman v. Bova, 1962, 198 Pa.Super. 279, 182 A.2d 245. The formula used by the justice below in ascertaining damages was proper in the circumstances of the instant case.

We have examined other claims of error made by the defendant, but find them without merit.

Since the period of redemption established by the amended judgment has now expired and the mortgage-indebtedness therein adjudicated should be updated, the case shall be remanded to the Superior Court for such purposes. The entry will be

Appeal denied with costs allowed to the plaintiff. Case remanded for further amended judgment establishing a new period of redemption from defendant's mortgage and determining the amount due under the mortgage as of the time of the amended judgment.

So ordered.

MARDEN, J., did not sit.

TAPLEY, J., sat at argument but retired before the opinion was adopted.