STATE OF MAINE
ANDROSCOGGIN, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-11-156

GUY PILOTE, et al.,

Plaintiffs

JUN 14 '17 AM11:04
ANDRO SUPERIOR COURT

v.

ORDER

ELEANOR MURPHY, et al.,

Defendants

Although this case was filed in September 2011, there were substantial delays in bringing it to trial. It was scheduled for trial in October 2013 but was taken off the trial list when counsel reported that the case had been settled. However, in July 2014 counsel for plaintiffs informed the court that settlement no longer appeared likely.

In August 2014 the court (MG Kennedy, J.) restored the action to the docket but determined that because of her involvement in settlement negotiations, the matter should be heard by another judge. The undersigned was assigned to the case in December 2014 but in the meantime plaintiff Guy Pilote had suffered a severe stroke. Counsel also reported that there was again a possibility that the case could be resolved without a trial. For both those reasons the court deferred the scheduling of trial.

Although the parties had been directed to file a status report by May 31, 2015, no status report was filed, and the case apparently dropped off the radar screen. In February 2017 the clerk's office advised the court that counsel for plaintiff reported that the case had not settled and that Mr. Pilote had sufficiently recovered to proceed to trial although his speech remained significantly impaired. Because the parties had requested a view of the driveway at issue in this

case, which was still covered by snow in early April, a jury-waived trial was eventually held on May 17-18, 2017.

Although the complaint was originally based on a claim that defendants had failed to construct a driveway that was allegedly contractually required, a driveway had in fact been constructed by defendant Philip Murphy while the case was pending. The issues at trial, which were litigated by express or implied consent of the parties,[1] were whether the driveway had been properly constructed and whether there was any contractual obligation on the part of defendants Philip and/or Eleanor Murphy to construct a driveway. The plaintiffs have the burden of proving a contractual violation by defendants by a preponderance of the evidence.

The court makes the following factual findings and reaches the following conclusions of law:

1. In 1997 defendant Eleanor Murphy acquired 7 acres with 200 feet of frontage along the Old Greene Road in Lewiston which consisted of the property shown as Lot 1 and Lot 2 on a survey and lot plan subsequently prepared in July 2006 and admitted as Plaintiffs' Ex. 4 at trial.

2. In April 2006 Eleanor Murphy's son, Philip Murphy, entered into a contract entitled "Mortgage Purchase Agreement," with David and Frances Fratus. Plaintiffs' Ex. 2. In that contract, in anticipation of acquiring half of the 7 acre property (Lot 2 on Pl. Ex. 4) from his mother, Philip Murphy (identified in the contract as "Seller") agreed to sell that parcel to the Fratuses. That contract included the following language:

> Note: Included in sale of property is common way drive provided
> by seller within 45 (forty five) days from date of deposit.

Plaintiffs' Ex. 2.

---

[1] *See* M.R.Civ.P. 15(b).

3. Plaintiffs' Ex. 2 was executed before Philip Murphy actually owned the property and before Lots 1 and 2 had been created.

4. The Survey and Lot Plan admitted as Plaintiffs' Ex. 4 was signed by surveyor Don Dostie on July 12, 2006 and filed in the Registry of Deeds on July 13, 2006. Plaintiffs' Ex. 4 shows the division of Eleanor Murphy's 7 acre parcel into two lots, each containing 3.5 acres. As shown on the plan, all of the frontage on the old Greene Road is on Lot # 1, but the plan shows what is described as a "50' wide common drive easement w/ 20' wide gravel drive" running over Lot # 1 approximately 425 feet straight in from the Old Greene Road to a location where there is a turnaround area with a spur leading into Lot # 2.

5. On July 20, 2006 Eleanor Murphy conveyed Lot 2 as shown on Plaintiffs' Ex. 4 to Philip Murphy, and on the same date Philip Murphy conveyed Lot # 2 to the Fratuses. Plaintiffs' Ex. 3 and 5. At that time the "common way drive" referred to in Plaintiffs' Ex. 2 (the April 2006 contract between Philip Murphy and the Fratuses) had not been constructed even though the 45 day deadline had passed.

6. On July 27, 2011 the Fratuses conveyed Lot # 2 to plaintiffs Guy and Susan Pilote. Plaintiffs' Ex. 6. The common way drive had not been constructed, and on July 27, 2011 the Fratuses also signed a document assigning to the Pilotes what the document describes as the Fratuses' rights to have the common drive constructed. Plaintiffs' Ex. 7.

7. The deed from Eleanor Murphy to Philip Murphy, the deed from Philip Murphy to Fratus, and the deed from Fratus to Pilote all reference the July 12, 2006 Survey and Lot Plan (Plaintiffs' Ex. 4) and convey a common drive easement over Lot 1 "being as shown on said Plan."

3

8. On September 12, 2011 the Pilotes filed this action alleging that the defendants had failed to construct the common drive which they contended was required by Plaintiffs' Ex. 2 and Plaintiffs' Ex. 4.

9. In late 2012 Philip Murphy began constructing a driveway on the site where a driveway easement is shown on Plaintiffs' Ex 4.[2] At that time Murphy rented some earth-moving equipment but was attempting to do the work himself. Photographs taken by Guy Pilote at that time show potentially sub-standard work that gave Pilote a justifiable belief that the driveway, once constructed, would not be usable or would quickly deteriorate.

10. Following Murphy's work, however, further work was performed on the driveway by Mark Randall of Bubier Construction. Randall originally delivered gravel to be placed on the driveway and later performed grading work and placed gravel on the driveway that Philip Murphy had started.

11. While there is a dispute as to when Randall's work was performed and the nature and quality of the work he did, the court finds that Randall initially performed grading work and placed gravel on the driveway before it was inspected by Randall LaClaire, a construction consultant hired by the Pilotes to inspect the driveway in April 2013, and that Randall then returned to perform further work after LaClaire's inspection.

12. Evaluating the driveway as he saw it in April 2013 against the common drive shown on the July 12, 2006 Survey and Lot Plan (Plaintiffs' Ex. 4), LaClaire dug 8 test pits and found that only one had the 18 inches of gravel specified on Plaintiffs' Ex. 4 and required by the City of Lewiston. Another five had 14-16 inches of gravel instead of the 18 inches specified, and two had only 8 or less inches of gravel. LaClaire also observed that in places the width of the

---

[2] At trial he testified that he did not think he had any contractual obligation to construct the driveway but did so in order to settle this case and because the same drive would be used to access Lot # 1, which remains in Murphy ownership.

4

driveway was less than the 20 feet specified on Plaintiffs' Ex. 4. Finally, LaClaire had criticisms of the ditching and the erosion control work as he saw it at that time.

13. The Pilotes contend that Randall's substantive work on the driveway was all performed prior to LaClaire's inspection in April 2013 and that the problems noted by LaClaire remain largely unremedied. As noted above, however, the court finds that Mark Randall returned to the site and performed further work after LaClaire's April 2013 inspection. Randall testified that he went to the site three times and that when he returned on the final occasion, Guy Pilote told him that test pits had been dug and portions of the driveway did not have 18 inches of gravel. This would have been after LaClaire's inspection. The court credits Randall's testimony on this issue.

14. Randall further testified that when he performed his final work at the site – which would have occurred after LaClaire's inspection – Randall regraded and placed more gravel as necessary so that the final driveway had 18 inches of gravel. The Pilotes question this testimony but have not met their burden of proof to demonstrate by a preponderance of the evidence that there is currently less than 18 inches of gravel on the driveway or that the subgrading is defective. They have also not proven their contention that there is organic material mixed in under the gravel that makes the driveway unsound.

15. On September 15, 2014, as set forth in Note # 4 on Defendants' Ex. 7, Randall confirmed to the Murphys in writing that that he had placed at least 18 inches of gravel on the driveway.[3]

16. At some point the portions of the driveway that LaClaire had observed to be less than 20 feet wide were widened, and the entire gravel drive is now at least 20 feet wide.

---

[3] Guy Pilote's stroke occurred on October 8, 2014, which means that, although Randall's testimony was somewhat inconsistent as to dates, Randall's conversation with Pilote would have occurred sometime after April 2013 and sometime before October of 2014.

5

17. Guy Pilote testified that he was concerned that a fire truck would not be able to make the turn at the bottom of the driveway onto the spur to Lot # 2. However, as built, the width of the driveway and the angle of the turn are consistent with Plaintiffs' Ex. 4, and the Lewiston City Planner testified that the 20 foot minimum width had been set in consultation with the Fire Department.

18. Just before trial, surveyor Dostie presented an amended lot plan dated May 17, 2017 reflecting the drive "as built" to the City of Lewiston. Defendants' Ex. 7. That plan noted Randall's letter to the Murphys confirming that at least 18 inches of gravel had been placed on the driveway. The Lewiston City Planner approved the May 17, 2017 amended lot plan the same day.

19. A view on the first day of trial showed that the drive slopes down from the Old Greene Road as shown on Plaintiffs' Ex. 4 and currently does not show any effects of erosion or runoff. The surface is somewhat rough, and while most of the surface consists of fine gravel, there are occasional larger stones mixed in.

20. As seen in the view and as shown on Defendants' Ex. 7, most of the drive as constructed is not bordered by well-defined ditches on either side of the gravel roadway.

21. The grade profile of the drive surface as constructed varies in several places from the grade profile shown on Plaintiffs' Ex. 4 by several inches. The maximum amount the profile as constructed varies from the profile shown on Plaintiffs' Ex. 4 at any point is no more than 6 inches. In all cases the overall downward slope of the drive and the approximate degree of the slope as shown on Plaintiffs' Ex. 4 is maintained in the drive as constructed.

22. The deeds from Eleanor Murphy to Philip Murphy, from Philip Murphy to Fratus, and from Fratus to Pilote all specifically reference the July 12, 2006 Survey and Lot Plan, which

6

is incorporated in the deed by reference. *Gravison v. Fisher*, 2016 ME 35 ¶ 38, 134 A.3d 857. The Pilotes were thus conveyed an easement for a 50 foot wide right of way containing a 20 foot wide gravel driveway as stated in their deed and shown on Plaintiffs' Ex. 4. *Id.*, 2016 ME 35 ¶ 37.[4]

23. Plaintiffs' Ex. 4 does not specify how or by whom the drive will be constructed. However, by virtue of the assignment to the Pilotes of the Fratuses' rights under their April 2006 contract with Philip Murphy, the Pilotes are entitled to enforce Philip Murphy's contractual obligation to construct the drive. The doctrine of merger by deed did not extinguish the contractual rights that were assigned to the Pilotes because Philip Murphy's agreement to construct a driveway was collateral to the agreement to convey Lot # 2 to the Fratuses. *See Waterville Industries Inc. v. Finance Authority of Maine*, 2000 ME 138 ¶ 16, 758 A.2d 986 (Me. 2000); *Wimmer v. Down East Properties Inc.*, 406 A.2d 88, 91 (Me. 1979).

24. Philip Murphy's contract with the Fratuses included an implied warranty that the work would be performed in a reasonably skillful and workmanlike manner *See, e.g., Gosselin v. Better Homes Inc.*, 256 A.2d 629, 639-40 (Me. 1969). Moreover, the July 2006 Survey and Lot Plan specifies that the gravel drive shall be 20 feet wide, shall have a surface thickness of 18 inches of gravel, shall follow the profile shown on the plan, and shall have ditching on either side of the gravel roadway. Eighteen inches of gravel is also a requirement of the City of Lewiston.

25. To the extent that the Pilotes base their claims in this action on the alleged absence of 18 inches of gravel, they have failed to meet their burden of proof as set forth above. To the extent that they base their claims in this action on minor and insignificant variances between the drive as constructed and Plaintiffs' Ex. 4, including the minor variances between the driveway

---

[4] Their deed also specifies that their easement includes an easement for below ground utilities along the 50 foot wide right of way. The placement of utilities is not an issue in this case.

7

surface profile shown on Plaintiffs' Ex. 4 and the surface profile of the drive as constructed, those variances do not constitute material breaches of contractual obligations entitling them to damages. Now that the City has approved the "as built" plan, the Pilotes now have a drive that will allow them to build on Lot # 2 if they choose to do so.[5]

26. However, the court credits the testimony of LaClaire that proper ditching is required to allow draining and to prevent erosion. The court finds that a gravel drive without proper ditching would not meet the implied warranty of proper workmanship. Moreover, ditching is specifically shown on Plaintiffs' Ex. 4. As noted above, most of the drive as constructed is not bordered by well-defined ditches on either side of the gravel roadway.

27. The court finds the cost estimates provided by LaClaire to be significantly higher than the amounts that would be actually required to remedy the driveway even if the Pilotes had prevailed on all their contentions as to alleged defects. Reducing LaClaire's estimates to a realistic level and considering only the work required to establish well-defined ditches and stabilize them to prevent erosion, the court concludes that the amount necessary to compensate the Pilotes is $15,000. Damages are awarded against defendant Philip Murphy in that amount.

28. The court does not find defendant Eleanor Murphy liable for the above damages as she was not a signatory to the agreement between Philip Murphy and the Fratuses that was assigned to the Pilotes. Philip Murphy testified that he and his mother now own Lot # 1. That lot is subject to the easement shown on Plaintiffs' Ex. 4, but Plaintiffs' Ex. 4 does not specify by whom the drive is to be constructed and does not subject Eleanor Murphy to any contractual obligation to construct the driveway.

---

[5] No evidence was offered as to the Pilotes' intentions with respect to Lot # 2. They already own land including a residence on the east side of Lot # 1 and that land includes an area adjoining the back side of Lot # 2. As a result, Lot # 1, which remains in Murphy ownership, is now bordered on three sides by land owned by the Pilotes.

8

The entry shall be:

1. Judgment shall be entered for plaintiffs against defendant Philip Murphy for $ 15,000 in damages, with costs.

2. Judgment shall be entered dismissing plaintiffs' damage claims against defendant Eleanor Murphy.

3. The rate of prejudgment interest shall be 3.3%. Postjudgment interest shall run at 6.87%. Given that some of the delays in bringing this case to trial resulted from plaintiff Guy Pilote's medical issues, the parties shall submit within 21 days their positions as to whether and to what extent prejudgment interest should be suspended pursuant to 14 M.R.S. § 1602-B(5).

4. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: June __13__, 2017

Thomas D. Warren
Justice, Superior Court

9

GUY PILOTE  - PLAINTIFF

Attorney for: GUY PILOTE
DANIEL LILLEY  - WITHDRAWN
DANIEL G LILLEY LAW OFFICES PA
39 PORTLAND PIER
PO BOX 4803
PORTLAND ME 04112

Attorney for: GUY PILOTE
JASON DIONNE  - RETAINED
ISAACSON & RAYMOND
75 PARK STREET
PO BOX 891
LEWISTON ME 04243-0891

SUSAN PILOTE  - PLAINTIFF

Attorney for: SUSAN PILOTE
JASON DIONNE  - RETAINED
ISAACSON & RAYMOND
75 PARK STREET
PO BOX 891
LEWISTON ME 04243-0891


vs
ELEANOR M MURPHY  - DEFENDANT

Attorney for: ELEANOR M MURPHY
JOHN CONWAY  - RETAINED 12/27/2011
LINNELL CHOATE & WEBBER LLP
83 PLEASANT STREET
PO BOX 190
AUBURN ME 04212-0190

PHILLIP G MURPHY SR - DEFENDANT

Attorney for: PHILLIP G MURPHY SR
JOHN CONWAY  - RETAINED 12/27/2011
LINNELL CHOATE & WEBBER LLP
83 PLEASANT STREET
PO BOX 190
AUBURN ME 04212-0190

SUPERIOR COURT
ANDROSCOGGIN, ss.
Docket No  AUBSC-CV-2011-00156

**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: CONTRACT
Filing Date: 09/12/2011

## Docket Events:

09/12/2011 FILING DOCUMENT - COMPLAINT FILED ON 09/12/2011

09/12/2011 Party(s):  GUY PILOTE
          ATTORNEY - RETAINED ENTERED ON 09/12/2011
          Plaintiff's Attorney: DANIEL LILLEY